## Case No. 17,386.

### Ex parte WELLS et al.

[3 Woods, 128; 17 Alb. Law J. 111; 25 Pittsb. Leg. J. 107.] [1]

Circuit Court, D. Louisiana. Feb. 1, 1878.

REMOVAL OF CAUSES — DUTY OF STATE COURT — LOCAL PREJUDICE—SELECTION OF JURORS.

1. Where a petition is presented to a state court under section 641, Rev. St. U. S., for the removal of a prosecution pending in that court, to the federal court, the state court has the right to examine its sufficiency.

2. But the federal court, by virtue of its superior right to try the case, if subject to removal, is entitled to assert its jurisdiction by proper process directed to the state court.

3. Where this is done by the federal court, it will be the duty of the state court, and its officers, to yield obedience to the writs issued from the federal court to effect such removal.

4. The law passed by the legislature of Louisiana, March 13, 1877, prescribing the mode of selecting and drawing jurors, is not open to any constitutional objection.

5. A petition for the removal of a cause under section 641, Rev. St. U. S., which alleges that the law for the selection of jurors, which is constitutional and on its face fair, will be so administered as to secure a jury inimical to the petitioner, and which alleges the existence of a general prejudice against him in the minds of the court, jurors, officers and people, does not state facts sufficient to authorize the removal.

6. It is only when some state law, statute, ordinance, regulation or custom hostile to the rights of the petitioner, and their enforcement, is alleged to exist, that the petitioner can have his case removed under that clause of said section on which the petitioner in this case relies.

This was the petition of J. Madison Wells, Thomas C. Anderson, Louis M. Kenner and Gardone Casanave, for a writ of certiorari to the superior criminal court of the parish of Orleans. This petition stated that the attorney-general of Louisiana had filed, in said criminal court, an information against the petitioners, charging them with "falsely and feloniously uttering and publishing as true a certain altered, forged and counterfeited public record, to wit, the returns from the parish of Vernon of an election held for presidential electors in the state of Louisiana, on the 7th of November, 1876, knowing the same to be false, altered and counterfeited;" that the petitioners had been arrested, and given bail, and that their trial was fixed for an early day. It further stated that on the 23d day of January, 1878, pursuant to the laws of the United States, and

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission. 25 Pittsb. Leg. J. 107, contains only a partial report.]

particularly section 641 of the Revised Statutes, they filed a petition in the said superior criminal court for the removal of the said information and proceedings to the next circuit court of the United States of this circuit and district, for trial, and that the facts on which such application was made were fully stated and set out in said petition, duly verified by oath in accordance with said section 641. The petitioners claimed that by the presentation of said petition to the criminal court, the cause stood removed, and that the said court had no authority to proceed further in the case; but they stated that the court and its officers, and the attorney-general, had disregarded said petition, and were proceeding with the cause in contempt of the authority of the United States court. A copy of the petition presented to the criminal court was appended to the application made to the circuit court. The principal facts stated in the petition filed in the state court, as a ground for removing the cause, were that by reason of the ill feeling against the petitioners in the jury, in the court, and in the public mind, throughout the parish of Orleans and the state, on account of their having been the returning officers of the election held in November, 1876, and republicans in politics, and of their acting in the canvass and compilation of the returns of said election, out of which the present prosecution originated, the most vindictive prejudice existed in the law-making and law-administering authorities of the state against them—they therefore believed that they would be denied their rights as citizens in the said court, and before any jury that might be impaneled therein under the existing jury law of the state, and that they would not be enabled to enforce their rights in said court in consequence of the inadequate remedies to that end provided. They further alleged that the jury law was passed March 13, 1877, and that in so far as it provided for the appointment of jury commissioners and the method of selecting the jury, it was intended for and operated in favor of, white citizens and against those of African descent, and that under it a jury had been drawn for the trial of the petitioners, the effect and intention of the law being to exclude persons of African descent, and other unprejudiced persons, from the jury, and to substitute in their place prejudiced white men, and thereby to deprive two of the petitioners, Kenner and Casanave (who were colored men), of a trial by their peers, and to bring them to trial by a white and prejudiced jury to the exclusion of men of their own color, and all the petitioners averred that through and by the machinery of said jury law, artfully contrived for the purpose, the state officers, and the court and its officers could and had so manipulated said law (and it was capable of such manipulation) as to deprive the petitioners of an impartial jury, and had organized a jury so prejudiced that defendants could not have a fair and impartial trial thereby, or by that court, and would be deprived of the full and equal benefit of the laws and proceedings for the security of

their persons in this case. They contended that the jury law was in violation of the constitution of the United States and of the equal civil rights of the petitioners.

John Ray and C. B. Ray, for petitioners.

1. The filing of the petition for removal in accordance with the statute, ipso facto removes the case from the state to the federal court: Osgood v. Chicago, D. & V. R. Co. [Case No. 10,604].

2. When the case has reached the federal court, it may inquire whether the case is a removable one: Section 5, Act March 3, 1875 (18 Stat. 472).

3. The right of trial by an impartial jury of the vicinage is one of the rights guaranteed by section 1 of the 14th amendment to the constitution of the United States, and provided for by sections 1977, 1978, and 1979, Rev. St. U. S.

4. The right of removal cannot be claimed solely on the ground of prejudice arising from personal unpopularity. It must be averred that the impairment of rights originates under color of some statute, ordinance, regulation, custom or usage of the state, but it is not necessary that the statute, etc., should on its face purport to deprive the party of his civil rights secured by law.

[See Case No. 349.]

BRADLEY, Circuit Justice. The application now made to the circuit court and presented to me, raises these questions: First. Was the mere presentation of the petition for removal sufficient to arrest the jurisdiction of the state court, or had that court the right to examine into its sufficiency? Secondly. If the court had the right to examine into the sufficiency of the application, has the circuit court the right to re-examine the same, and, if found sufficient, to issue a writ of certiorari, or other writ, for the removal of the proceedings from the state court? Thirdly. If the circuit court has such right, did the petition in this case present sufficient ground for removing the cause?

I think the first and second questions must be answered in the affirmative. The state court surely is not bound to shut its eyes and yield to every application that comes to it. Though removal (when authorized) is a matter of right, and not of favor, yet the court must have the right to see whether the application to remove comes within the meaning of the law. I have no doubt, however, that the circuit court, by virtue of its superior right to try the cause (if subject to removal), is entitled to assert its jurisdiction by proper process directed to the state court. This view is corroborated by certain express provisions of the statutes. Section 716 of the Revised Statutes, declares that the United States courts may issue all writs which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law. And, in the very case under consideration, it is provided by section 642 of the Revised Stat-

utes, that if the defendant be in actual custody on process issued by the state court, and have performed all the acts necessary to a removal of his cause, the clerk of the circuit court is authorized to issue a writ of habeas corpus cum causa, which the marshal of the United States is authorized to serve by taking the body of the defendant into his custody to be dealt with in the circuit court according to law and the orders of said court, or, in vacation, of any judge thereof. This is the proper writ for removing both the cause and the person in such a case. Of course, the writ should not be issued by the clerk without being allowed by a judge of the court, which is the regular course in issuing writs of habeas corpus and certiorari. I think, therefore, that the circuit court may issue either a writ of habeas corpus cum causa or of certiorari, according as the defendant is in custody, or not in custody, for the purpose of removing the cause into that court. When this is done, it will be the duty of the state court and its officers to yield obedience to such writs; and it will be presumed that they will do so without any further inhibition, either by writ or otherwise.

The course pointed out in section 641, for the defendant to docket the case in the circuit court if the clerk of the state court refuses to furnish copies of the proceedings, is an additional and summary method of proceeding when only the clerk is delinquent. But it does not meet the exigency of a refusal on the part of the state court itself to recognize the defendant's right to remove the cause. This requires the more formal and orderly process of the court as above specified.

The removal of causes from one court to another is a form of quasi-appellate jurisdiction well known in the English system of procedure to which our own has constant reference. The forms of process necessary to be used for the purpose, and the principles upon which they are framed, are familiar to every student of the common law. The only peculiarity in the present case is, that the causes of removal are special and limited, and application therefor must be first made to the court a qua: the reason for which is undoubtedly to be found in the anxiety of the legislative department to avoid every possible cause of jealousy and complaint.

I should have no hesitation, therefore, to allow the writ of certiorari in this case, if I were satisfied with the sufficiency of the application. This brings me to that question.

As regards the law complained of, passed March 13th, 1877, prescribing the mode of selecting and drawing jurors, I have carefully examined its provisions, and am unable to see anything in it open to any constitutional objection. It provides for the appointment, by the judges of the principal courts in New Orleans, of two commissioners, whose duty it is made to select impartially from the citizens of the parish, qualified to vote, the names of not less than one thousand good and competent men to serve on juries. These names are to be placed in a box, and from thence is to be drawn the

general panel for each term. This is the principal feature of the law. Substantially the same method is in use in several other states. The commissioners, it is true, may abuse their trust; but no system can be devised that will not be liable to abuses.

The allegations with regard to the manipulation of the law in such manner as to secure a jury inimical to the petitioners, and with regard to the existence of a general prejudice against them in the minds of the court, the jurors, the officials and the people, are not within the purview of the statute authorizing a removal. The fourteenth amendment to the constitution, which guaranties the equal benefit of the laws on which the present application is based, only prohibits state legislation violative of said right; it is not directed against individual infringements thereof. The civil rights bill of 1866 was broader in its scope, undertaking to vindicate those rights against individual aggression; but, still, only when committed under color of some "law, statute, ordinance, regulation or custom." And when that provision in this law, which is transferred to section 641 of the Revised Statutes, gave the right to remove to the United States courts a cause commenced in a state court against a person who is denied or cannot enforce any of the rights secured by the act, it had reference to a denial of those rights or impediments to their enforcement, arising from some state law, statute, regulation or custom. It is only when some such hostile state legislation can be shown to exist, interfering with the party's right of defense, that he can have his cause removed to the federal court.

This being my view of the act, it follows that I cannot grant the application. If I am wrong the petitioners, having claimed the right of removal, and it being denied by the state court, may carry the case, after final judgment of the highest court of the state, to the supreme court of the United States, and obtain its judgment on the question.

The application is refused.