Griffin B. Bell, Circuit Judge, and Whitehurst, District Judge, dissented in part.

Thomas **RACHEL** et al., Appellants,

v.

**STATE OF GEORGIA**, Appellee.

No. 21354.

United States Court of Appeals
Fifth Circuit.

March 5, 1965.

Anthony G. Amsterdam, Philadelphia, Pa., Howard Moore, Jr., Donald Hollowell, William H. Alexander, Atlanta, Ga., Jack Greenberg, New York City, for appellants, Melvyn Zarr, Worcester, Mass., Ann Cooper, John Quarles, Jr., Boston, Mass., of counsel.

J. Robert Sparks, Asst. Sol. Gen., Albert Sidney Johnson, Asst. Atty. Gen., of Georgia, Eugene Cook, Atty. Gen., of Georgia, William T. Boyd, Sol. Gen., Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and WHITEHURST, District Judge.

TUTTLE, Chief Judge:

This is an appeal by the named appellant and 19 other persons charged with the violation of Georgia's so-called anti-trespass statute, Title 26 Georgia Code Annotated, Section 3005, from an order entered by the district court without a hearing remanding the cases for trial to the state court after they had been removed by a petition for removal filed pursuant to Title 28 U.S.C.A. § 1443 (1) and (2) (the Civil Rights Removal Sections). Having held, in the case of Congress of Racial Equality et al. v. Town of Clinton, Parish of East Feliciana, 5 Cir., 1964, —— F.2d ——, that the enactment of the Civil Rights Act of 1964 resolved the question of appealability of remand orders as to cases removed to the Federal District Courts under Section 1443, supra,[1] we turn directly to the merits of the appeal.[2]

---

1. Prior to the enactment of Section 901 of the Civil Rights Act of 1964, Title 28 U.S.C.A. § 1447(d) on its face seemed to prohibit an appeal from an order of remand. It provided:
"[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Notwithstanding the provisions of that statute, however, a substantial question had been raised in the CORE case, supra, and in this case when this Court originally granted a stay of the remand order pending appeal whether the express provisions of 1447(d) applied to Civil Rights cases. We discussed this issue in the

CORE case. This discussion need not be repeated by reason of the fact we have now determined that whether or not remand orders in such cases were appealable before the passage of the Civil Rights Act, the adoption of that Act by Congress forecloses the issue in favor of appealability.

2. The appellee's contention that this appeal is untimely has no merit. The notice of appeal was filed sixteen calendar days after the order appealed from, and it could only be considered untimely if the ten-day time limit of Fed.R.Crim.P. 37(a) (2) were applicable. It is ab-

The question to be resolved on the merits of the appeal is whether the petition for removal in this case adequately stated a basis for removal under the indicated section of the removal statutes. Title 28 U.S.C.A. § 1443, provides as follows:

"§ 1443. Civil rights cases

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

The meaning of this statute, passed in a package with the first post-bellum Civil Rights Act, Act of April 9, 1866, 14 Stat. 27, has been the subject of debate since its passage. It was originally construed to cover cases in which the defendant alleged his inability to obtain a fair trial due to such informal impediments as local prejudice. State v. Dunlap, 1871, 65 N.C. 491; see also Ex parte Wells, 3 Woods 128, quoted in Kentucky v. Powers, 1906, 201 U.S. 1, 27, 26 S.Ct. 387, 50 L. Ed. 633 (Bradley, J., on circuit).

Later, the view was taken that only formal impediments, stemming from State legislation, could give rise to such deprivations of equal civil rights as would allow a defendant to invoke federal jurisdiction by removal. Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387. As this latter view was the latest Supreme Court pronouncement directly on the matter, the district court in the present case felt bound by it. In remanding the case to the State court, the district court states that "A criminal prosecution or a civil case under this statute [28 U.S. C.A. § 1443] because of a civil right or the enforcement of such right must arise

---

solutely clear, however, that Rule 37 has no application here.

The Supreme Court promulgated Rules 32 through 39, without submitting them to Congress, under the authority of the Criminal Appeals Rules Act. Act of Feb. 24, 1933, c. 119, 47 Stat. 904, as amended, 18 U.S.C. § 3772. The only power given under that Act was to prescribe rules of procedure "with respect to any or all proceedings *after verdict, or finding of guilt by the court if a jury has been waived, or plea of guilty * * *.*" (Emphasis added.) When it adopted the predecessor to Rule 37(a) (2), see 292 U.S. 661, 662, and when it promulgated that Rule in its present form, see 327 U.S. 825, the Supreme Court made it explicit that the Rule was meant to apply only to criminal appeals "after verdict, or finding of guilt * * * or plea of guilty."

The question whether the predecessor to Rule 37(a) (2) applied to a criminal appeal prior to verdict—in that case an appeal from an adjudication of criminal contempt—was squarely decided in Nye v. United States, 1941, 313 U.S. 28, 43–44, 61 S.Ct. 810, 813, 85 L.Ed. 1172. Reject-

ing the argument that the Criminal Rules applied to all cases that could be categorized as "criminal", the Court held that the history and the language of the order promulgating the Rule required that it be applied only "with respect to any or all proceedings *after verdict* in criminal cases." (Emphasis added.)

In 1940, Congress authorized the Supreme Court to prescribe rules of procedure in criminal proceedings "prior to and including verdict." Act of June 29, 1940, c. 445, 54 Stat. 688, as amended, 18 U.S.C. § 3771. Rules 1–31 and 40–60 were promulgated under the authority of this Act. It is clear that Rule 37(a) (2) can find no authority in this statute. Not only was it expressly prescribed under the "after verdict" enabling act, see 327 U.S. 825, but, as authorized in that act, it was never submitted to Congress. Under the "prior to verdict" enabling act, no rule could become effective unless submitted to Congress for its acquiescence. Only Rules 1–31 and 40–60 were so submitted. See 327 U.S. 824; Dession, The New Federal Rules of Criminal Procedure: II, 56 Yale L.J. 197, 230 (1947).

out of the destruction of such right by the Constitution or statutory laws of the State wherein the action is pending."

In delineating the scope of the civil rights removal statute for the first time, the Supreme Court placed great stress on the necessity that the denial of protected rights be made to appear in advance of trial, State of Virginia v. Rives, 1879, 100 U.S. 313, 25 L.Ed. 667. By way of illustration, the Court indicated that denials of equal rights at the hands of court officials, occurring during trial, could not be cured by removal but that such denials under state legislation could be safeguarded against in this manner. It has been argued that, under a realistic appraisal of the facts in a given case, the Supreme Court today would recognize the right to removal under § 1443(1) even where no legislative denial of rights is shown. See Krieger, "Local Prejudice and Removal of Criminal Cases From State to Federal Courts," 19 St. John's L.Rev. 43 (1944); Note, "Local Prejudice in Criminal Cases," 54 Harv.L.Rev. 679, 685–86 (1941). Such a recognition by the Court thus would reemphasize the putative essence of Virginia v. Rives—that the denial of equal rights must be susceptible of demonstration before trial—and minimize the illustrative language in that case dealing with state legislation.

We have been asked by the appellants to anticipate such an interpretation of § 1443 by the Supreme Court; however, there is no reason for us to reach that question in this case. This is so for two reasons. First, the petition in this case did allege the denial of protected rights by State legislation. Secondly, the passage of the Civil Rights Act of 1964 and its interpretation in Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300, provide a different, and narrower, ground on which this case may be disposed of.

After alleging the specific facts respecting the arrests of each of the 20 persons, including allegations that each of them was, when arrested, seeking food or accommodations at a restaurant or hotel, the petitioners alleged that each of their acts had been followed by special Grand Jury presentments charging them with violating the named section of the Georgia Code, and that the said presentments were pending in the Superior Court of Fulton County and were to be heard within a few days if not transferred. They then alleged the following:

"(3) By virtue of Title 28, United State Code Annotated, Section 1443 (1) and (2), this Court has jurisdiction to hear and try the charges now pending against the petitioners. Removal is sought to protect the rights guaranteed to petitioners under the due process and equal protection clauses of Section 1, Fourteenth Amendment of the Constitution of the United States and to protect the right of free speech, association, and assembly guaranteed by the First Amendment of the Constitution of the United States.

"Moreover, petitioners are being prosecuted for acts done under color of authority derived from the constitution and laws of the United States and for refusing to do an act which was, and is, inconsistent with the Constitution and Laws of the United States.

"(4) The petitioners are denied and/or cannot enforce in the Courts of the State of Georgia rights under the Constitution and Laws of the United States providing for the equal rights of citizens of the United States and all persons within the jurisdiction thereof, in that, among other things, the State of Georgia by *statute*, custom, usage, and practice supports and maintains a policy of racial discrimination." (Emphasis added).

██ ██ The district court apparently decided that, since the removal petition did not expressly allege that Section 26–3005 was unconstitutional on its face, the petition failed to allege adequately that "the destruction of" the right to equal protection granted by the United

States Constitution was caused by "statutory laws of the State" of Georgia. The allegation contained in paragraph 4 of the petition for removal, quoted above, that petitioners were denied their rights under the constitution and laws of the United States because the State of Georgia "by statute \* \* \* supports and maintains a policy of racial discrimination," however, clearly asserts the precise ground for removal that the trial court said was required. This would not be so, of course, if a petition for removal, unlike other pleadings under the Federal Rules of Civil Procedure, must contain something more than the bare bones allegation of the existence of a right. As to this matter, we have no doubt that the rules of notice pleading apply with as much vigor to petitions for removal as they do to other pleadings, which, according to Rule 8(f) of the Federal Rules of Civil Procedure, "shall be so construed as to do substantial justice." The statute requires that the petition for removal contain "a short and plain statement of the facts which entitle him or them to removal." 28 U.S.C.A. § 1446. The Supreme Court has held that the removal must be effected by the filing of "a verified petition setting forth, agreeably to the ordinary rules of pleading, the particular facts, not already appearing, out of which the right arises." Chesapeake & Ohio Railway Co. v. Cockrell, 1914, 232 U.S. 146, 151, 34 S.Ct. 278, 280, 58 L.Ed. 544. It is plain, therefore, that the petition is to be construed "agreeably to the ordinary Rules of pleading" since in fact the petition for removal is the basis for the federal court's jurisdiction and it is a pleading of the facts necessary to vest jurisdiction in the federal court.

In Allman v. Hanley, 5 Cir., 1962, 302 F.2d 559, 562, this Court said:

"The absence of detailed grounds setting forth basis for removal is not fatal to defendants' right to remove. We think that the allegation that petitioners were officers acting under color of office in the employment of the United States was suffi-cient. Title 28, United States Code, Section 1446(a) requires only a short, plain statement of facts entitling a defendant to removal."

This is in line with this Court's construction of the Federal Rules of Civil Procedure relating to the liberality of pleadings under the rules. If a petition for removal states sufficient in the way of allegations to support proof of adequate grounds for removal, it is to be treated in the same manner as a complaint in federal court. As to such a pleading, this Court has frequently reiterated what we said in Des Isles v. Evans, 5 Cir., 1952, 200 F.2d 614, 615, in quoting Moore's Federal Practice:

"[T]he courts have ruled time and again that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."

In that case we also quoted from an opinion by this Court in De Loach v. Crowley's Inc., 5 Cir., 1942, 128 F.2d 378, 380:

"Under the Rules of Civil Procedure a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings."

■ We conclude, therefore, that this petition for removal adequately alleged that the appellants suffered a denial of equal civil rights by virtue of the statute under which they were being prosecuted in the State Court. Unless there is patently no substance in this allegation, a good claim for removal under § 1443(1) has been stated. That the allegation does not lack substance may be seen from a consideration of the Civil Rights Act of 1964, as construed by the Supreme Court.

Statutes of South Carolina and Arkansas, substantially the same as the Georgia statute involved here, were before the Supreme Court in Hamm v. City of Rock Hill, supra. Having upheld the con-

stitutionality of Title II (Public Accommodations) of the Civil Rights Act of 1964 both as respects businesses serving interstate travelers and businesses of a more local nature a substantial part of whose products have moved in commerce, Heart of Atlanta Motel, Inc., v. United States, 1964, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258; Katzenbach v. McClung, 1964, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed. 2d 290, the Court in Hamm held that prosecutions under State anti-trespass statutes may not stand if the denial of service or the request for removal from the premises was based upon an intent to discriminate against the arrested persons on account of race. The Court ruled that "The Civil Rights Act of 1964 forbids discrimination in places of public accommodation and removes peaceful attempts to be served on an equal basis from the category of punishable activities. Although the conduct in the present cases occurred prior to enactment of the Act, the still pending convictions are abated by its passage." The Court further said:

> "In short, now that Congress has exercised its constitutional power in enacting the Civil Rights Act of 1964 and declared that the public policy of our country is to prohibit discrimination in public accommodations as therein defined, there is no public interest to be served in the further prosecution of the petitioners. And in accordance with the long-established rule of our cases they must be abated and the judgment in each is therefore vacated and the charges are ordered dismissed."

In the removal petitions in the cases pending before this Court, it is explicitly alleged that the arrests of appellants "were effected for the sole purpose of aiding, abetting, and perpetuating customs, and usages which have deep historical and psychological roots in the mores and attitudes which exist within the City of Atlanta with respect to serving and seating members of the Negro race in such places of public accommo-

dation and convenience upon a racially discriminatory basis and upon terms and conditions not imposed upon members of the so-called white or Caucasian race. Members of the so-called white or Caucasian race are similarly treated and discriminated against when accompanied by members of the Negro race." These are allegations of fact, which if true, place these prosecutions by the State of Georgia squarely within the principle announced by the Supreme Court in Hamm v. City of Rock Hill.

In its opinion, the Supreme Court pointed out that no State may now prosecute Negroes who were charged with having refused to leave premises in accordance with the provisions of the Georgia statute where the request to leave was based upon a policy of racial discrimination. The Court pointed out that Section 203 of the Act provides:

> "No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 201 or 202, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202, or (c) *punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202.*" (Emphasis in Supreme Court opinion).

The Court said, "On its face, this language prohibits prosecution of any person for seeking service in a covered establishment, because of his race or color." The Court then proceeded to apply this prohibition to pending as well as prospective prosecutions. If therefore, the arrests and prosecutions of the appellants "were effected for the sole purpose of aiding, abetting and perpetuating customs * * * with respect to serving and seating members of the Negro race" in the respective restaurants "upon a racially discriminatory basis," as alleged,

342

then under the holding of the Supreme Court these prosecutions will have to be abated.

■ Because of the Civil Rights Act of 1964, Title II, and its recent interpretation by the Supreme Court, we hold that the allegations of these petitions are sufficient to invoke federal jurisdiction under 28 U.S.C.A. § 1443(1). That statute provides, as it has provided since its enactment in 1866, a federal forum in civil actions and criminal prosecutions to vindicate, in certain circumstances, rights "under any law providing for the equal civil rights of citizens of the United States." When the removal statute was originally enacted, the "law providing for * * * equal civil rights" most clearly contemplated was found in sections 1977 and 1978 of the Revised Statutes, Strauder v. State of West Virginia, 1879, 100 U.S. 303, 311, 25 L.Ed. 664. These sections formed part of the 1866 Civil Rights Act along with the removal provisions. In upholding the constitutionality of the removal statute, the Supreme Court made it clear that that act was merely one legitimate way for Congress to ensure the effectiveness of the substantive provisions of the civil rights laws. Strauder v. State of West Virginia, supra, at 310–312. The Court said, "A right or an immunity, whether enacted by the Constitution or only guaranteed by it, even without any express delegation of power, may be protected by Congress. * * * And one very efficient and appropriate mode of extending such protection and securing to a party the enjoyment of the right or immunity, is a law providing for the removal of his case from a State court, in which the right is denied by the State law, into a Federal court, where it will be upheld. This is an ordinary mode of protecting rights and immunities conferred by the Federal Constitution and laws. Sec. 641 [now § 1443 (1)] is such a provision." See also State of Virginia v. Rives, 1879, 100 U.S. 313, 318, 25 L.Ed. 667.

■ From its inception, then, the civil rights removal statute has been, as its language plainly contemplates, an adjunct to the substantive civil rights statutes enacted by Congress. The history of the several codifications and recodifications of sections 1977 and 1978, of the several amendments and enlargements upon these seminal civil rights laws, and of the parallel codifications and recodifications of the removal statute which is presently 28 U.S.C.A. § 1443 (1) amply supports this view of the tenor of the statutory language. (The history of these provisions is easily traceable through annotations in U.S.C. A.). It can not be doubted that § 1443 (1) is today an adjunct of the Civil Rights Act of 1964. See New York v. Galamison, 2nd Cir., 1965, 342 F.2d 255. Particularly is this so in light of the references to the provision of a federal forum on removal for the protection of substantive civil rights in the act itself, Title IX, § 901, and in its legislative history. See House Judiciary Committee Report reprinted in BNA, The Civil Rights Act of 1964, pp. 286–87; remarks of Senator Dodd, 110 Cong.Rec. 6739 (daily ed. April 6, 1964).

■ Congress, while carving out rights and immunities in the area of civil rights, has provided a jurisdictional basis for efficiently and appropriately protecting those rights and immunities in a federal forum. The provision of this protective forum is not limited by the States' obligation, under the Supremacy Clause, to protect federally guaranteed civil rights as zealously as would a federal court. That there is such on obligation on State tribunals is true, and vital, but it is irrelevant here. Theoretically, there is no need for any federal jurisdiction at all—except that of the Supreme Court—because State courts are required to protect federally created rights. Nevertheless, the power of Congress to provide a federal forum also to protect such rights is undoubted. Such power was exercised in enacting § 1443(1).

■ The federally guaranteed right and immunity here pertinent were eluci-

dated by the Supreme Court in Hamm v. City of Rock Hill, supra, as follows:

"[T]he language of § 203(c) supports a conclusion that non-forcible attempts to gain admittance to or remain in establishments covered by the Act, are immunized from prosecution, for the statute speaks of exercising or attempting to exercise a 'right or privilege' secured by its earlier provisions. The availability of the Act as a defense against punishment is not limited solely to those who pursue the statutory remedies. The legislative history specifically notes that the Act would be a defense to criminal trespass, breach of the peace and similar prosecutions."

Under the allegations of the petitions in the present case, these appellants have been denied, because of State legislation, "a right under * * * [a] law providing for the equal civil rights of citizens of the United States." They are entitled to a federal forum as provided for in 28 U.S.C.A. Sec. 1443(1) in which to prove these allegations. If the allegations are proved, then the federal court acquires jurisdiction for all purposes. Under normal circumstances the state prosecutions would then proceed in the federal court. Here, however, the finding of the jurisdictional fact immediately brings the Hamm case into play. The same fact determination requires dismissal rather than further prosecution in the District Court.[3]

Upon remand, therefore, the trial court should give appellants an opportunity to prove the allegations in the removal petition as to the purpose for the arrests and prosecutions, and in the event it is established that the removal of the appellants from the various places of public accommodation was done for racial

reasons, then under authority of the Hamm case it would become the duty of the district court to order a dismissal of the prosecutions without further proceedings.

Concluding, as we do, that the petition for removal alleges sufficient grounds showing a denial of the civil rights of the appellants in the state courts by reason of the State statute, it follows that the order of remand was in error and it must be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GRIFFIN B. BELL, Circuit Judge (concurring in part and dissenting in part):

I regret that I cannot concur altogether in the opinion of the majority. The reasoning preliminary to the holding therein seems to embrace the following steps. We begin with the jurisdictional base, i. e., the removal statute. 28 U.S. C.A. § 1443(1). Next, the case of Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633, is cited for authority that the removal statute is limited to those situations where a state law gives rise to the deprivation of equal civil rights by reason of which a defendant seeks to invoke federal jurisdiction. Then the removal petition itself is construed, and the conclusion reached that appellants do indeed assert that they were being denied their equal civil rights in the state court because of a Georgia statute. The fact that the statute is nowhere specified is met by applying the philosophy of federal notice type pleading to the bare allegation of the removal petition, to the end of assuming that the petition referred to Georgia Code § 26–3005, the anti-trespass statute.[1] It is

---

3. In light of the view we have taken of this case, it is unnecessary to review the appellants' contention that they are also entitled to removal under 28 U.S.C.A. § 1443(2).

1. "It shall be unlawful for any person, who is on the premises of another, to refuse and fail to leave said premises

when requested to do so by the owner or any person in charge of said premises or the agent or employee of such owner or such person in charge. Any person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished as for a misdemeanor. (Ga.Laws 1960, p. 142)"

also assumed that appellants will claim on hearing that the statute is either unconstitutional on its face or as applied by the state court to appellants. The unconstitutionality in application may be claimed on the holding of the Supreme Court in Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct. 384, 13 L. Ed.2d 300, in its retroactive application of the Civil Rights Act of 1964 for reason of national policy to the socalled sit-in cases. That case protects persons engaged · in peaceable sit-ins in restaurants covered by the Act from prosecution.

Thus, the majority concludes that the removal petition may fairly be read as alleging a valid claim for removal under 28 U.S.C.A. § 1443(1). And up to this point, I am in agreement with the majority. That is, I agree that the removal petition may now be read to allege that appellants are unable to enforce in the Georgia courts the right, conferred by the Civil Rights Act of 1964 as construed by Hamm v. City of Rock Hill, to be free from prosecution under state trespass statutes for peaceful sit-in demonstrations. The fact is that appellants were being prosecuted under such a statute, viz., Ga.Code § 26–3005. Therefore I also agree that the District Court erred in remanding to the state court without a hearing. However, I wish to disassociate myself from that part of the holding as to how these cases are to be treated on remand to the District Court.

We should reverse and remand for a hearing on the question of jurisdiction. But, the majority states, and this is where I disagree, that upon remand the trial court should give appellants the opportunity to prove their allegations as to the purpose of the arrests and prosecutions, and in the event the refusal of service in places of public accommodation was for racial reasons, then under the authority of the Hamm case it would become the duty of the District Court to dismiss the prosecutions. If this is all that remains for consideration on remand, the holding of the majority is

tantamount to applying Hamm v. Rock Hill in all its sweep against trespass statutes, retroactively to the State of Georgia. It is, in effect, a holding that Georgia has applied and will continue to apply its trespass statute contrary to the teachings of the Supreme Court in Hamm, even though Hamm had not been decided when the cases were in the state courts and even though the state courts have not had an opportunity to deal with these cases in the light of Hamm. In dispensing with the requirement that appellants prove on remand that the Georgia courts will not accord them their rights under the Hamm decision, the theory of the majority must be that Hamm has tainted these prosecutions *ab initio*, and hence jurisdiction in the federal court has been established retroactively by the very fact that the prosecutions were ever commenced. This casual treatment of the Georgia courts is a striking departure from my concept of Federalism and from the duty which I think comity imposes upon us with regard to that system.

The fact is that the Supreme Court had never, before and absent Hamm and the 1964 Civil Rights Act, held the use of state trespass statutes under the circumstances here presented to be unconstitutional. This was one of the problems that the Civil Rights Act sought to obviate. See the following cases where the question was pretermitted: Griffin v. State of Maryland, 1964, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754; Barr v. City of Columbia, 1964, 378 U.S. 146, 84 S.Ct. 1734, 12 L.Ed.2d 766; Robinson v. State of Florida, 1964, 378 U.S. 153, 84 S.Ct. 1693, 12 L.Ed.2d 771; Bell v. State of Maryland, 1964, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822; and Bouie v. City of Columbia, 1964, 378 U.S. 347, 84 S.Ct. 1697, 12 L. Ed.2d 894. We recognized this fact in Poole v. Barnett, 5 Cir., 1964, 336 F.2d 267. It is now undoubtedly true that the 1964 Civil Rights Act and the Hamm decision have placed a gloss on state trespass statutes so that they may not be applied against those peaceably seeking

service in restaurants covered by the Act, or against those whose prosecutions for such activity were pending at the time of the passage of the Act. However, in view of this gloss being of a supervening nature, I would give the Georgia court from whence these cases were removed a chance to apply the Hamm doctrine unless appellants can demonstrate on remand to the District Court that the Georgia court would not fairly accord them their rights under Hamm.

Thus, on remand the District Court should first determine just what appellants do claim under the present allegations of their notice type pleading. If they contend that the statute is unconstitutional in its application to them by the state, by virtue of the Hamm case or otherwise, then the question will arise whether the state in fact seeks to apply the statute in an unconstitutional manner. If it appears, and the burden would be on appellants to show this, that the state will apply the statute contrary to the teachings of Hamm, the District Court should deny remand and retain the cases for disposition; otherwise, the cases should be remanded.

I doubt that appellants can point to any right that would be jeopardized by remand to the state court. The Supreme Court of Georgia has already applied Hamm to a group of sit-in convictions with the result of abating the conviction and ordering the cases dismissed. Bolton, et al. v. State of Georgia, 140 S.E.2d 866, decided February 8, 1965. Such jeopardy as may be involved is jeopardy to our dual system of courts, federal and state. And a federal court should not lightly intrude into a sphere of activity left to state and local government under the Constitution: the maintenance of local order. Because the decision of the majority goes to the point of vesting jurisdiction in the federal court retroactively, a step further than the Supreme Court went in Hamm, I respectfully dissent.

WHITEHURST, District Judge (concurring in part and dissenting in part):

I concur in Judge TUTTLE's opinion on the merits. However, the Notice of Appeal having been filed six days later than permitted under Rule 37(a) (2) of the Rules of Criminal Procedure, I would dismiss the appeal.