**Annie Maria McDUFFY et al.**

**v.**

**WORTHMORE FURNITURE, INC.**

**Civ. A. No. 73–426–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 9, 1974.

George S. Newman, Neighborhood Legal Aid Society, Inc., Richmond, Va., for plaintiffs.

Thomas D. Johnston, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, consumers pursuant to conditional sales contracts, seek declaratory and injunctive relief from alleged deprivations of due process of law occurring in the course of repossession of articles purchased under such contracts. Defendants are retail furniture store merchants. Jurisdiction is alleged pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The case is presently before the Court on defendant's motion to dismiss. Briefs have been received and argument heard by the Court, including a brief and argument on behalf of the Virginia Retail Merchants Association, Inc., the Virginia Automobile Dealers Association, the Virginia Bankers Association and the Retail Merchants Association of Greater Richmond, Virginia, Inc., as *amicus curiae*. Upon the material before it, the Court deems the matter ripe for disposition.

The facts relating to plaintiff McDuffy, as stated in her behalf, are as follows: [1]

On or about October 6, 1972, plaintiff McDuffy and defendant Worthmore entered into an installment loan contract.

---

1. In light of the Court's disposition of plaintiff McDuffy's claim, it is unnecessary to give separate consideration to intervenor Kenny's claim which contains no material allegations which would indicate a different result.

Worthmore reserved a security interest in the purchased item, a stereo. After paying approximately $195 pursuant to the terms of the contract, McDuffy's payments fell into arrears. On August 20, 1973, without notice of any kind to McDuffy, Worthmore's agents entered McDuffy's apartment in her absence and in disregard of the protestations of Doris Inez Mayo, a thirteen year old child whom McDuffy had left in the apartment, repossessed the stereo. McDuffy in no way consented either to the entrance by Worthmore of her apartment, or to the repossession of her property. Thereafter, defendant Worthmore indicated to McDuffy that unless payments were brought up to date shortly, the stereo would be sold. On August 30, 1973, McDuffy filed this action.

The contract between plaintiff and defendant Worthmore Furniture contained the following provision:

> If Buyer defaults in complying with any of the terms or conditions hereof . . . the full amount then unpaid hereunder shall become immediately due and payable without notice or demand, and Seller or its agent or any sheriff or other officer of the law may either: 1. Collect the same by suit or otherwise, or 2. Retake possession of said property, and for this purpose may enter any premises where said property may be and remove same, and sell said property either at public or private sale, without notice to Buyer . . .

This action alleges that the existence of Va.Code Ann. § 8.9–503,[2] providing for private, peaceful repossession so permeates the private conduct with official sanction as to render such conduct state action. If the repossession without notice or hearing is state action, the argument goes on, it is a deprivation of property without due process of law prohibited by the Fourteenth Amendment.

Section 8.9–503 of the Virginia Code is a part of a uniform code of laws known as the Uniform Commercial Code (UCC), drafted by the National Conference of Commissioners on Uniform State Laws. The UCC was adopted by the Virginia General Assembly in 1964, and took effect on January 1, 1966. 1964 Acts of Assembly ch. 219. Virginia Code § 8.9–504, which is also being challenged, contains provisions for the disposition of collateral after default.

The threshold question in this action is whether the State of Virginia has become sufficiently involved with self-help repossessions to render the defendant's conduct in this case action "under color of state law."

■■ What is potentially objectionable under federal law is not seizure without notice or hearing itself, but substantial state participation in such a deprivation. Furthermore, the question is not one of any involvement by the state, but one of "significant" involvement. Moose Lodge v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973).

The plaintiff complains of no direct involvement by a state official in the repossession of the merchandise in question. The allegation is that representatives of the creditor defendant, private parties, committed the repossession. There has been no allegation that state or local officials participated in the repossession or in any way were involved in such actions. The sole basis for a claim of "state action" is the existence of a Virginia statute on the subject of

---

2. "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides, the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under § 8.9–504."

repossession—a statute which neither creates a power nor compels an action.

■ The complaint alleges no facts indicative of "state action" as found by the courts over the years. Thus, there is no suggestion that the private action took place in concert with state officials, United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); that the state was a "joint participant" or joint venturer in the challenged activities, Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); that the creditors were performing an essentially governmental function as agents of the state, Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (selection of party nominees for inclusion on election ballot); Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (administration of primary election that determined officers for county); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (management of town); Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (management of public park); or that the state has required or coerced the creditors to take the challenged action, Peterson v. Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963) (ordinance requiring segregation of races in restaurants); Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963) (command by city official to continue segregation in restaurants); Robinson v. Florida, 378 U.S. 153, 84 S.Ct. 1693, 12 L.Ed.2d 771 (1964) (state regulation placing additional restrictions on restaurants not enforcing a policy of segregation); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (judicial enforcement of a racially restrictive covenant forcing a private party to discriminate); Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (judicial enforcement of a racially restrictive covenant thus coercing discriminatory action).

In a recent case directly in point with the suit at hand, the limited situations where private conduct has traditionally been deemed "state action" were listed as follows:

> As a general rule, action by a non-state official fulfills the requirement of "state action" in only three circumstances: (1) Where a state official is acting in concert with a private individual; (2) where the state compels such action; and (3) where the state law creates a power which has no common law or contractual origin. Baker v. Keeble, 362 F.Supp. 355, 357 (M.D.Ala.1973).

Finally, the state has not invested the private repossessors in this case with any of the peculiar protections which it accords its officers. Defendants here had no badge of authority. They were given no special privilege to effect any repossession in the course of which the peace would be breached. They were given no "good faith" defense or other means of avoiding damages should it be shown that the repossession was not peaceful or that the possessory interest which they claimed to exercise had not in fact been vested. The Court does not accept plaintiffs' assertions that were it not for the statute, peaceful repossession of a chattel by its owner pursuant to a contract divesting its holder of any possessory interest would constitute a serious tort or felony. As stated in Jones, The Law of Chattel Mortgages and Conditional Sales, § 1337, p. 421 (6th ed. 1933):

> Since . . . from the intrinsic nature of a conditional sale the buyer has the right of possession only so long as he is not in default in the performance of his agreement, and the ownership of the legal title draws to it the possession except during such time as the owner has conferred that right upon another, when the right ceases in the vendee it reverts to the vendor as a matter of law and no contractual stipulation is essential in that behalf. Consequently, when the vendee defaults in payment, the vendor may repossess the property, though the contract may be silent as to such right.

See also, Prosser, Law of Torts, § 22, p. 119 (4th ed. 1971). This appears also to have been the position of the Virginia courts. Lloyd v. Federal Motor Truck Co., 168 Va. 72, 190 S.E. 257 (1937); Universal Credit Co. v. Taylor, 164 Va. 624, 180 S.E. 277 (1935). See also, Greene v. First National Exchange Bank, 348 F.Supp. 672 (W.D.Va.1972).

Given this background, the case is distinguishable from a case such as Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), where the statutory transferral of what had traditionally been a peculiarly state function was found to "drape" a private actor with state authority. In *Hall*, landlords were statutorily provided with a lien on the personal goods of the tenants for rents due and a concomitant right to seize those goods in satisfaction of the lien. There the statute simultaneously created from whole cloth both the landlord's interest in property to which he previously had no claim whatsoever and his power to immediately seize it. The Fifth Circuit found that such a seizure had "traditionally been the function of the Sheriff or constable" 430 F.2d at 439. In short, the Court there held that the statute vested in the landlord and his agents authority normally exercised by the state and historically a state function. See James v. Pinnex, 495 F.2d 206 (5th Cir. 1974). The case here is otherwise. Peaceful repossession in the conditional sales context has traditionally been available through private initiative as an area deemed capable of acceptable private resolution. See *Adams, supra*.

█ The argument remains that in passing a statute promulgating a private right to engage in conduct which might be constitutionally denied to the state itself, the state has so encouraged private exercise of the right that treatment of such action as occurring "under color" of state law is warranted. In proper circumstances such a theory would be viable. Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967).

In Reitman v. Mulkey, *supra*, actions had been filed in the California Courts based upon alleged violations of the Unruh Civil Rights Act (Cal.Civ.Code Secs. 51, 52) which prohibited discrimination upon the basis of race, color, religion, ancestry or national origin. The actions alleged that the defendants had refused to rent the plaintiffs an apartment or were seeking to evict them from an apartment solely on the basis of their race. The defendants predicated their defense upon Section 26 of Article I of the California Constitution (commonly known as Proposition 14) which was enacted in a statewide ballot in California after the plaintiff's actions had been filed. Proposition 14 provided in part as follows:

Neither the State nor any subdivision or agency thereof shall deny, limit or abridge, directly or indirectly, the right of any person, who is willing or desires to sell, lease or rent any part or all of his real property, to decline to sell, lease or rent such property to such person or persons as he, in his absolute discretion, chooses.

The plaintiffs challenged the constitutionality of Proposition 14 under the Equal Protection Clause of the Fourteenth Amendment. In ruling upon this challenge, the California Supreme Court examined Proposition 14 in terms of its historical context and the conditions existing prior to its enactment, its immediate objective and intent and its ultimate effect. Mulkey v. Reitman, 64 Cal.2d 529, 533–534, 50 Cal.Rptr. 881, 413 P.2d 825 (1966). The California Court concluded that the sole purpose of the Constitutional amendment was to overturn state anti-discrimination and fair housing laws, to prohibit the enactment of such laws in the future, to create a constitutional right to discriminate, and thereby to authorize and encourage private discrimination by making the state "at least a partner" in the acts of racial discrimination. *Id.* at 534, 536, 543, 50 Cal.Rptr. 881, 413 P. 825. In ruling that Proposition 14 violated the Equal Pro-

tection Clause of the Fourteenth Amendment, the California Supreme Court found that Proposition 14 constituted an affirmative change in the pre-existing law and did not simply adopt a policy of state neutrality on the subject. *Id.* at 542–543, 50 Cal.Rptr. 881, 413 P.2d 825.

The United States Supreme Court affirmed, ruling that the purpose and effect of the constitutional amendment was not only to change the State law on discrimination, but to establish an affirmative constitutional right to engage in discriminatory housing practices. 387 U.S. at 377, 87 S.Ct. 1627.

One element of the type of showing contemplated in a claim under *Reitman* would be private action "with the knowledge of and pursuant to" a state statute. See Adickes v. Kress & Co., 398 U.S. 144, 162, n. 23, 90 S.Ct. 1598, 1611, 26 L.Ed.2d 142 (1970). This circumstance alone, however, is not sufficient. Adams v. Southern California First National Bank, 492 F.2d 324 (9th Cir. 1973). The Court in *Reitman* itself carefully avoided enunciation of such a doctrine.

This Court has never attempted the "impossible task" of formulating an infallible test for determining whether the State "in any of its manifestations" has become significantly involved in private discriminations. "Only by sifting facts and weighing circumstances" on a case-by-case basis can a "nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). Here the California court, armed as it was with the knowledge of the facts and circumstances concerning the passage and potential impact of § 26, and familiar with the milieu in which that provision would operate, had determined that the provision would involve the State in private racial discriminations to an unconstitutional degree. We accept this hold-

ing of the California court. *Reitman, supra,* 387 U.S. at 378–379, 87 S.Ct. at 1632.

*Reitman* looked to the "immediate objective" of the statute, its "ultimate effect" and its "historical context and the conditions existing prior to its enactment." 387 U.S. at 373, 87 S.Ct. at 1630. And the decision was explained in Palmer v. Thompson, 403 U.S. 217, 224, 91 S.Ct. 1940, 1944, 29 L.Ed.2d 438 (1971) as "based on a theory that the evidence was sufficient to show the State was abetting a refusal to rent apartments on racial grounds."

As has been previously discussed, the statute challenged here neither creates a power nor compels action. While there can be little doubt that private repossessors will gain some comfort from the formal codification of the remedy they have in the past pursued, there can be nothing here equivalent to the psychological effect of the repeal of existing open housing legislation and the constitutionalization of private discrimination which lay behind the decision in *Reitman*. In view of the legal, historical and commercial acceptance of private repossession which shaped the atmosphere into which the provision was introduced, the overall effect of the passage of Va.Code Ann. § 8.9–503 cannot be found sufficient to transpose the same conduct which was privately carried on within the law before its enactment into state action. While particular significance might be attributed to the codification by persons involved in specific cases and some "encouragement" gleaned, the statute in question cannot reasonably be considered to have an impact sufficiently potent to effect the transformation for which plaintiffs argue. The action of the defendants in this case was not action "under color of law" as that phrase is used in 42 U.S.C. § 1983. *Adams, supra;* Bichel Optical Lab. Inc. v. Marquette Nat. Bk., 487 F.2d 906 (8th Cir. 1973); McCormick v. First National Bank, 322 F.Supp. 604 (S.D.Fla.1971);

Greene v. First National Exchange Bank, 348 F.Supp. 672 (W.D.Va.1972); Kirksey v. Theilig, 351 F.Supp. 727 (D.Colo. 1972); Pease v. Havelock National Bank, 351 F.Supp. 118 (D.Neb.1972); Baker v. Keeble, 362 F.Supp. 355 (M.D.Ala. 1973); Nichols v. Tower Grove Bank & Trust Co., 362 F.Supp. 374 (E.D.Mo. 1973).

To the extent that it was considered, a distinction in state action terms between use of state process to acquire wrongfully detained property and private peaceable repossession, even when carried out as an understood right deriving from extant law, was implied in Justice Stewart's opinion for the Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In discussing common law actions of debt or detinue, actions in which a creditor "wished to invoke state power to recover goods wrongfully detained," Justice Stewart points out that such actions did not provide for a return of the property before final judgment. He notes, however, that

[t]he creditor could, of course, proceed without the use of state power, through self-help, by "distraining" the property before a judgment. *Fuentes, supra* at 79, n. 12, 92 S.Ct. at 1993.

Other Justices imply in *Fuentes* that the private/state dichotomy which Justice Stewart recognized in the common law retains its viability in the modern UCC context and is applicable in resolving the § 1983 state action question. E. g., *Fuentes, supra* at 102–103, 92 S.Ct. 1983. (White, J. dissenting).

For the reasons heretofore stated, the case will be dismissed. This action, never having been formally declared a class action, is not at this time treated as such. Although defendant's motion was for dismissal for want of jurisdiction, plaintiff's complaint raised a colorable question of federal law and defendant's motion is deemed to be one alternatively seeking dismissal for failure to state a claim on which relief can be granted. It is on those grounds that the motion will be granted.

An appropriate order will issue.