**POWHATAN MINING CO. et al. v. ICKES, Secretary of the Interior, et al.**

No. 8826.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1941.

W. T. Kinder and Arthur L. Dougan, both of Cleveland, Ohio (Jones, Day, Cock-

ley & Reavis, of Cleveland, Ohio, on the brief), for petitioners.

Abe Fortas, of Washington, D. C. (Abe Fortas, Harry I. Rand, Joseph Friedman, and Robert L. Stern, all of Washington, D. C., on the brief), for respondents.

Alan C. Maxwell, of Washington, D. C. (Alan C. Maxwell, of Washington, D. C., James H. McGlothlin, of New York City, and Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., on the brief), for Bituminous Coal Producers Board—District No. 3.

Milton Carr Ferguson, of Washington, D. C. (Milton Carr Ferguson, Washington, D. C., and John Evans Rose, of Pittsburgh, Pa., on the brief), for Bituminous Coal Producers Board—District No. 2.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This case arises under a petition to review an order of the Director of the Bituminous Coal Division of the United States Department of the Interior, filed pursuant to Section 6 (b) of the Bituminous Coal Act of 1937, Title 15 U.S.C. Section 828 et seq., 15 U.S.C.A. § 828 et seq. The order denied certain changes in the minimum prices for coal sought by the petitioners in applications made under Section 4 II (d) of the Act, Title 15 U.S.C. Section 833 (d), 15 U.S.C.A. § 833 (d), and consolidated for hearing and decision.

Acting under authority of the Bituminous Coal Act, respondents established a schedule of minimum prices, effective October 1, 1940, for the sale of bituminous coal throughout the various districts created in the United States by the Act. Petitioners, two corporations doing business in the State of Ohio, which is District No. 4, sought a modification of the schedule as to the prices applicable to ⅜" slack coals, which were the same as those set for ¾" coals of District No. 4. Petitioners ask for differentials which will enable them to sell their ⅜" slack at 10 cents below the ¾" slack within the district. Petitioner Ohio and Pennsylvania Coal Company also asks for a decrease of 30 cents in the price of its partially dedusted ⅜" slacks, now priced 25 cents above ordinary ¾" slacks.

While petitioners contend that the findings are not supported by substantial evidence, we decide the case upon the initial question as to the existence of a full and fair hearing. Petitioners attack the admissibility in evidence of certain statistical data upon which they claim that the director relied in making his findings, and urge that they were deprived of fundamental rights in not being permitted to cross-examine or to offer explanatory evidence or rebuttal bearing on the weight properly to be accorded to these statistics.

The director admitted in evidence some twenty-five pages of tabulations based upon invoices filed with the Division under Section 4 II (a) of the Act, purporting to show the prices of coal of the same or similar quality as petitioners' slack coals sold to the Cleveland Electric Illuminating Company, one of the largest consumers of coal in District No. 4, during the year 1940. The tabulations supported the conclusion of the director that under the open competition which existed prior to the enactment of the Bituminous Coal Act, numerous sales of ⅜" and larger sizes of slack coal were made at prices which did not reflect the differences in market value claimed by petitioners and that the analytical quality of petitioners' coal does not warrant the reduction asked. Exhibits 8, 9, and 10a through 10y, to which particular objection is made, give a comparative list of prices on sales of various sizes of coals from District No. 4 and other competitive districts, made by producers whose identity is not disclosed. These exhibits purport to be based on invoices which were filed under Section 4 II (a), which in its pertinent portion reads as follows: "(a) All code members shall report all spot orders to such statistical bureau hereinafter provided for as may be designated by the Commission and shall file with it * * * copies of all invoices * * *. All such records shall be held by the statistical bureau as the confidential records of the code member filing such information."

■ Counsel for petitioners objected to the introduction of the exhibits. We think they were admissible under the liberal rules applicable to administrative hearings. However, a more serious objection grows out of the fact that petitioners demanded that they be decoded so that the petitioners, for purposes of cross-examination, might know the identity of the producers who made the sales and the other facts surrounding the transactions. The scope of the desired cross-examination was not limited merely to the identity of the producers. Objection was made to the ex-

hibits on the ground that the variation in prices shown might be due to matters which concerned the shipper and the consumer, so that the implications which the Division was seeking to draw from the exhibit might not be correct. The director stated that the figures were merely tonnages and the names were not important. However, the exhibits in question carried substantial variations in prices, and petitioners desired to cross-examine as to the particular facts surrounding the individual sales, contending that if, for example, the sales showed that 2″ slacks had to be disposed of at a sacrifice and were sold for 75 cents a ton, the probative value of that part of the exhibit would be worthless. Counsel for District No. 8 supported this position, saying that "possibly these differentials existing in the open market arose through circumstances that have nothing to do with the real value of these coals," and counsel for District No. 4 joined in asking for full cross-examination upon the exhibits. Counsel for the Division stated that the prices related to such a long period of time and were sufficiently consistent and clear that further inquiry was unnecessary. In the discussion that followed, counsel for petitioners declared that the mere disclosure of the names did not satisfy the objection, because it was essential to develop all the facts surrounding the particular movements. Late in the hearing an exhibit purporting to give the names of the producers used in the tabulations was received in evidence, but they were not decoded so that a particular purchaser could be associated with a particular transaction. The director finally ruled that the petitioners could inquire into all the circumstances surrounding any sale; that any party could request a subpoena for such purpose, and a subpoena would be issued for the producer who made the sale in question. No witnesses were subpoenaed for examination as to this phase of the case. Petitioners contended that they could not know what transaction they wished to inquire into until they had a list of the producers, together with their corresponding code numbers. They contend here that the ruling compelled them, if they wished to attack the tabulations, to subpoena as their own witnesses their competitors who, through the Bituminous Coal Producers' Boards for Districts 2, 3, 4, and 8, had intervened in the action in opposition to the application of petitioners. They also contend that they would have been compelled, under the rules of the Division, to deposit

witness' and mileage fees for every witness subpoenaed. The Division does not contradict these assertions, and justifies the ruling upon the ground that it preserves the confidential character of the information and at the same time makes it accessible to the petitioners.

The two provisions as to the filing of information [Sections 4 II (a) and 10 (a) of the Act] are markedly differentiated. Section 4 II (a) applies to code members only and requires reports to the statistical bureau which is established in each district, the filing with the bureau of spot orders, copies of contracts, invoices, credit memoranda and other information. That is to say, the specific information required in Section 4 II (a) is information as to individual transactions. The requirement as to secrecy in these matters is also limited. It is that the information shall be held confidential in the bureau, and no specific penalty is imposed by the Act for revealing this information. On the other hand, Section 10 (a) permits the Division to require reports from all producers (whether code members or not) and to require a uniform system of accounting in their business. The reports are to be made not to the statistical bureau, but to the Division, and information in the reports bearing on cost of production or sales realization may be disclosed only in a hearing before a court or the director. A penalty is established for disclosure of this information in violation of the section.

We do not agree with the contention of counsel for two of the intervening districts, that the desired disclosure was authorized by Section 10(a). While the information contained in the exhibits displays some of the characteristics of information upon "sales realization" covered by Section 10 (a), the rules expressly provide for tabulations of spot orders or invoices, and the tabulations introduced here were based upon invoices filed obviously under Section 4 II (a). However, we think that the disclosure was not prohibited by Section 4 II (a) and should have been made. That section contains no prohibition against revealing the identity of the code members in a hearing before the director or in a court, and we conclude that the data underlying tabulations of material filed pursuant to this section and compiled under the rules is not required to be kept secret upon an adversary hearing under the statute. Furthermore, we hold that in all fairness the data should have been disclosed.

■■ It is difficult to see how the accuracy, authenticity and relevancy of these tabulations could be tested in any way without the disclosure of the names of the code members who reported the data upon which the tabulations are based. The tabulations were compiled from data which was kept secret, but which was in the possession of the Division. Errors in computation could not be checked unless they appeared upon the face of the tabulation, and the real meaning of the figures could not be developed unless the character of the individual sales could be inquired into. Furthermore, this is not a case where in accordance with the rules the petitioners had asked to have the tabulations introduced. The Division itself introduced and relied upon them. The petitioners should not be penalized by being forced to pay the heavy expense of subpoenas together with a deposit in advance of the amount adequate to cover the fees and mileage. Rule 19 (c) of the Rules of Practice and Procedure [30 C.F.R. 1938 Supp., 301.19(c)], requires that such fees be paid by the party at whose instance the testimony is taken. But when the Division introduces the tabulations, the evidence is put in at its instance and the petitioners should be given the opportunity to cross-examine as to the weight and authenticity of the figures. It is true that administrative tribunals, including the Division, are not bound by the common-law rules of evidence, but the more liberal the practice in admitting testimony, the more imperative it is to preserve "the essential rules of evidence by which rights are asserted or defended." Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431. Cf. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 230, 59 S.Ct. 206, 83 L.Ed. 126. The hearing must be full. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288. Full hearing includes the right to cross-examine.

The situation is that the Division's employees made the tabulations from material to which it had full access, from material ordered by statute to be held "confidential," and hence withheld from petitioners. The Division introduced the tabulations as evidence, and objected to giving information which was essential for proper cross-examination. The disadvantages that result from the fact that the administrative bodies exercise both executive and quasi judicial functions have often been discussed.

Doubtless the Congress, to which decision of such questions is confided, considered that the convenience of the process and the resulting expedition of public business justified the merging of the functions. But we have seen no other instance in which such an administrative agency has, by adopting rules which provide for tabulations based on secret material within its own possession, created evidence to be used against parties to a controversy before the administrative agency, and has ruled that the evidence cannot be attacked by the ordinary methods of cross-examination.

We think that this procedure violates the essential canons of fairness laid down by the Supreme Court. Interstate Commerce Commission v. Louisville & Nashville R. Co., supra; Consolidated Edison Co. v. National Labor Relations Board, supra. The director, in holding a hearing under Section 4 II (a) of the Act, is performing a function widely different from ordinary executive action. The duty carries with it fundamental procedural requirements. Morgan v. United States, supra. We are unable to see how there has been a full hearing unless the right to cross-examine has been afforded.

We do not pass upon the admissibility of testimony and exhibits from General Docket 15, showing the comparative analyses of certain coals in Districts Nos. 2 and 4, for the petitioners in no way contest the truth of the analyses.

■■ It is argued that apart from the tabulations, there is sufficient evidence supporting the director's findings. But we may not assume that the director would have made the same findings if full hearing had been accorded. The statute requires that in this proceeding notice and hearing be given, and this means that facts and circumstances which ought to be considered must not be excluded, and that the trier of the facts must make his findings based upon the evidence. In other words, the order itself must be based upon full hearing. Morgan v. United States, supra, 298 U.S. at page 480, 56 S.Ct. 906, 80 L.Ed. 1288. As the cross-examination was erroneously excluded, we are unable to say how it might have illuminated the controversy, or how the director would have regarded the facts in evidence in light of further facts which might have been elicited. The cross-examination asked for was with reference to a highly material subject, namely, whether a similar differential between $\frac{3}{8}''$ and $\frac{3}{4}''$

slacks had existed in District No. 4 prior to October 1, 1940. Under the statute, the director was required to give all facts judicial consideration.

■■ It is contended that since the director stated that the invoice tabulation exhibits were merely corroborative of other testimony in the record, no prejudice has been shown. However, the general lack of consistency and "chaotic market history," to which the director alluded in rejecting market history as a basis on which to rely for determining the proper price differentials, might well have been explained by the circumstances surrounding the individual sales. The testimony of the principal price examiner of the marketing branch of the Division indicated that in some instances under open competition slack coals were sold below the usual prices obtainable to enable a producer to avoid congestion at his mine and fill orders for lump coal. He stated that some of the prices in the exhibit probably represented instances where orders for smaller sizes were filled by deliveries in which larger sizes were substituted to enable the producer to keep all sizes moving, and that the circumstances surrounding particular transactions were important in determining their weight in arriving at a test of market prices over a period of years. In view of the fact that market history has influenced establishment of similar differentials in Districts Nos. 7 and 8, and is made a factor for consideration by the Act itself, it should be carefully examined. One who has been denied access to information or deprived of the privilege of cross-examination on pertinent matters is not in a position to make an offer of proof as to those matters. Likewise, a reviewing court cannot know what a full hearing might have shown and for that reason is not free to speculate as to the prejudice involved in such an erroneous ruling.

■■ The fact that the director's order might be justified on the merits does not obviate the requirement of a fair trial. Inland Steel Co. v. National Labor Relations Board, 7 Cir., 109 F.2d 9, 20. The requirement of fair trial is binding on administrative agencies as well as on courts. Morgan v. United States, 304 U.S. 1, 14, 15, 58 S.Ct. 773, 999, 82 L.Ed. 1129; Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 302, 304, 57 S.Ct. 724, 730, 81 L.Ed. 1093. In the latter case the Supreme Court, commenting upon the fact that much that administrative agencies do within the realm of administrative discretion is exempt from supervision, declared: "All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' * * * of a fair and open hearing be maintained in its integrity."

■ The practical application of this rule is emphasized in this case. The exhibits are admissible under the broad rule that administrative agencies are not bound by the ordinary rules of evidence. All the more scrupulous should be the effort on the part of the agency to extend to the litigant the right to test evidence thus admitted by the fullest possible cross-examination.

The order is reversed and the case is remanded for rehearing in accordance with this opinion.