UNITED STATES of America and Arthur
F. Sampson, Administrator of
General Services,

v.

The PUBLIC SERVICE COMMISSION
OF the STATE OF MARYLAND
et al.

Civ. No. B–74–1264.

United States District Court,
D. Maryland.

Aug. 23, 1976.

Jervis S. Finney, U. S. Atty. for the District of Maryland, and William McC. Schildt, Asst. U. S. Atty., Baltimore, Md., for plaintiffs.

William F. Mosner, Baltimore, Md., for defendants.

Before WINTER, Circuit Judge, and YOUNG and BLAIR, District Judges.

PER CURIAM:

Plaintiffs in this action, the United States and the Administrator of the General Services Administration (GSA), seek a declaratory judgment that Rule IV–A of the Maryland Public Service Commission (Commis-

sion)[1] restricting witness examination by certain intervenors in proceedings before the Commission violates the federal constitution and the law of Maryland.[2] Plaintiffs further seek a permanent injunction against the rule's application.

Defendants moved to dismiss and both sides filed cross motions for summary judgment. After a consolidated hearing, the court is satisfied that the case may properly be finally decided on the present record.

In their motion to dismiss, defendants contend that plaintiffs are not entitled to relief because (1) the suit is barred by the Johnson Act (28 U.S.C. § 1342 (1962)), (2) plaintiffs have failed to exhaust their available state remedies, and (3) the court should abstain from asserting jurisdiction since plaintiffs have a right to judicial review of the rule in the state court. We deal with these defenses seriatim:

I

*The Johnson Act*

■ Defendants' argument that the Johnson Act[3] prohibits the type of declara-

1. Rule IV–A, promulgated by PSC Order No. 60923 (August 21, 1974), provides:

> In a proceeding involving an application by a public service company seeking authority of the Commission to increase rates and charges for the utility service and where the direct testimony of witnesses has been pre-filed, with the Commission and with intervening parties to the proceeding, not less than ten (10) days prior to the scheduled appearance of witnesses at a hearing, *cross-examination shall be limited to a maximum of thirty (30) minutes per witness per intervening party to the proceeding.* Re-direct of witnesses and re-cross examination of witnesses on their re-direct testimony shall be limited to a maximum of twenty (20) minutes, respectively, per witness per intervening party. Nothing herein shall be construed in any way to apply to the Office of People's Counsel. (Emphasis added.)

It is undisputed that no public hearings were held by PSC prior to promulgation of the above rule and that no public notice of the PSC's consideration of the rule was given prior to its promulgation except to the Committee on Administrative, Executive and Legislative Review of the State Legislature. *See* Request for Admission of Fact, ¶¶ 1(b)(c) (Clerk's File # 4); Answer to Request for Admission of Fact,

¶¶ 1(b)(c) (Clerk's File # 5). Plaintiffs herein on September 19, 1974 filed a petition with the PSC urging reconsideration of the Rule; on October 3, 1974, PSC denied this request for consideration.

2. While initially disputed, the necessity for a three-judge court to consider plaintiffs' claims is now conceded by all parties. *See United States v. Public Service Comm'n*, Civ. No. B–74–1264 (D.Md., Dec. 3, 1975).

3. The Johnson Act, 28 U.S.C. § 1342, provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
> (2) The order does not interfere with interstate commerce; and
> (3) The order has been made after reasonable notice and hearing; and
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

678

tory and injunctive relief sought in this case clearly lacks merit. By its unambiguous language, the Johnson Act proscribes federal court injunctions of orders affecting public utility *rates*. The contested rule relates only to procedural incidents to be afforded intervenors in rate cases before the Commission and falls outside the perimeters of the Johnson Act proscription. *See Public Util. Comm'n v. United States*, 355 U.S. 534, 540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958) (requiring submission of rates for approval not a rate order); *Island Airlines, Inc. v. CAB*, 352 F.2d 735, 744 (9 Cir. 1965) (order identifying permissible route not a rate order). *See generally Tennyson v. Gas Serv. Co.*, 367 F.Supp. 102, 104–05 (D.Kan.1973), aff'd, 506 F.2d 1135 (10 Cir. 1974) (Johnson Act not broad limitation of federal jurisdiction).

■ Moreover, jurisdiction in this suit is not predicated solely on diversity of citizenship or repugnance to the federal Constitution as required for operation of the proscription of the Johnson Act. 28 U.S.C. § 1342(1). Jurisdiction is predicated in part upon 28 U.S.C. § 1345 providing federal jurisdiction where the United States is a party plaintiff.[4] The Johnson Act, then, is not applicable. *See Island Airlines, Inc. v. CAB*, supra. *Cf. Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976); *Department of Employment v. United States*, 385 U.S. 355, 357–58 & nn. 6–7, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966).[5]

### Exhaustion

We see no merit in defendants' contention that plaintiffs did not exhaust their available state remedies.

On September 19, 1974, GSA petitioned the Commission to reconsider its new rule.

On October 3, 1974, that petition was denied. The Public Service Commission has thus had the opportunity to consider plaintiffs' claims with respect to Rule IV–A prior to the initiation of this suit in federal court. Defendants do not point to any other *administrative* remedies available to plaintiffs. Thus, even if we assume that exhaustion of administrative remedies is required, they have been exhausted.

■ Exhaustion of state *judicial* remedies is not required where the claim is based on the denial of federal constitutional rights. *See Timmons v. Andrews*, 538 F.2d 584 (4 Cir., 1976), and authorities collected therein.

### Abstention

■ Defendants' contention that we should abstain from exercising jurisdiction in this case is predicated on *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and its progeny. We think that this line of authority does not require abstention.

The decision in *Pullman*, a case arising under federal question jurisdiction, was based not only upon the desirability of avoiding needless constitutional adjudication, but also upon a recognition of the appropriate roles of the federal and state courts, respectively, in our scheme of constitutional federalism. It was a case where a private litigant asserted a federal right against a state agency. Thus, its precise holding is that, where a private litigant is a party, "scrupulous regard for the rightful independence of the state governments," as well as for the smooth working of the federal judiciary, requires that at times the federal courts abstain rather than pass upon difficult issues of state law which may moot constitutional claims.

4. Additionally, plaintiffs were not afforded notice or a hearing prior to the Commission's promulgation of the contested rule, both of which are prerequisites to operation of the Johnson Act. 28 U.S.C. § 1342(3).

5. In *Moe*, a unanimous Court, speaking through Mr. Justice Rehnquist and relying on the *Department of Employment* case, construed the Anti-Injunction Act, 28 U.S.C.

§ 1341, not to bar the United States from seeking to enjoin the enforcement of a state tax law. While the statute allegedly proscribing injunctive relief in the instant case is the Johnson Act, 28 U.S.C. § 1342, both provisions have been held inapplicable to actions brought by the United States. *See* C. Wright, Law of Federal Courts, § 51, p. 195 (1970).

In the case at bar, the United States is the plaintiff, and jurisdiction is based, *inter alia* on 28 U.S.C. § 1345. The problems of federalism inherent in this case are thus different from a case brought by a private litigant. Except in some suits for money damages or for collection of moneys due, the United States sues to redress or to prevent alleged injury to a national interest; and to anticipate our view of the merits, such is this case. We think it unseemly to hold either that a sovereign may not enforce its rights in its own courts, or that in enacting § 1345 Congress was not stating a sufficiently strong policy that the United States should be heard in its own courts that the judicially created *Pullman* doctrine should be applied. Thus, the presence of the United States as a plaintiff and the nature of the suit militate strongly against the applicability of abstention. *United States v. Akin*, 504 F.2d 115 (10 Cir. 1974), reversed on other grounds *sub nom. Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Here, the factors which favor abstention are insufficient to overcome the interest of the United States in being allowed to sue in its own courts. Admittedly, the state law issues are not without difficulty; however, this alone is insufficient to justify abstention. *Meredith v. Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Further, an incorrect construction of state law will not disrupt any delicately wrought scheme of substantive regulation; this case involves only the procedural rights of intervenors before the Public Service Commission, not the scope of the Commission's power to regulate. *Compare Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We therefore hold that this is not an appropriate case for the application of the *Pullman* doctrine of abstention.

## II

■ Since we find no merit in defendants' procedural and jurisdictional defenses, we turn to the merits of plaintiffs' grounds for relief. GSA claims entitlement to relief on the grounds of both state law and the federal constitution. Despite our decision on abstention, we of course recognize the desirability of avoiding unnecessary adjudication of constitutional questions, and so we consider first plaintiffs' state law claims. *See Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

### State Law Claims

■ Plaintiffs argue that under *Hyson v. Montgomery County Council*, 242 Md. 55, 217 A.2d 578 (1966), the half-hour limitation on cross-examination is invalid. *Hyson* held that where an agency is required to hold a public hearing, and to decide disputed adjudicative facts based upon evidence produced and a record made, a reviewing court could examine the record to insure that an adequate opportunity for cross-examination had been allowed. By its terms, *Hyson* applies only to agencies operating in a "quasi-judicial" rather than a "quasi-legislative" role. *See also Albert v. Public Service Commission*, 209 Md. 27, 120 A.2d 346, 350–51 (1956) (no right to hearing in quasi-legislative proceeding). Under Maryland law, it is unclear whether rate-making is a quasi-judicial or a quasi-legislative function and, hence, whether *Hyson* has any application. *Compare Bosley v. Dorsey*, 191 Md. 229, 60 A.2d 691 (1948) (rate-making "purely a legislative function"), *and Spintman v. Chesapeake and Potomac Telephone Co.*, 254 Md. 423, 255 A.2d 304, 308 (1969) (rate-making "involves the legislative process of making a rule for the future") *with Public Service Commission v. Hahn Transportation, Inc.*, 253 Md. 571, 253 A.2d 845, 848 (1969) (suggesting that rate-making hearing is quasi-judicial).

But even if *Hyson* applies, we do not believe that the Maryland courts would hold this rule facially invalid. In *Hyson*, the court was faced with a situation in which the parties to a zoning hearing were each restricted to one hour's cross-examination per witness. Nonetheless, the court declared that "[w]e have no intention of attempting to promulgate a comprehensive

rule respecting the type or the amount of cross-examination that [the agency] must provide at hearings . . ." 217 A.2d at 586. Rather, the court undertook a detailed analysis of the case before it in order to determine whether insufficient cross-examination had been allowed under the circumstances of that particular hearing.

We believe that under Maryland law, Rule IV–A would similarly not be held invalid on its face; instead, it is more probable that the state courts would examine each rate-making procedure to insure that there had been no unreasonable, prejudicial denial of the right to cross-examine in that case. In the present State of Maryland law, we thus think that GSA is not presently entitled to relief. We must therefore consider plaintiffs' claims of invalidity under the federal constitution.

### Constitutionality of the Rule

■ The rule's claimed infraction of the federal Constitution is twofold—both of the supremacy clause and of the equal protection clause. We agree that the supremacy clause has been infringed; we find it unnecessary to consider whether the equal protection clause has also been infringed.

The authority for the Administrator of GSA to participate in utility rate proceedings is set forth in 40 U.S.C. § 481:

(a) The Administrator shall, in respect of executive agencies, and to the extent that he determines that so doing is advantageous to the Government in terms of economy, efficiency, or service, and with due regard to the program activities of the agencies concerned—

. . . . .

(4) with respect to transportation and other public utility services for the use of executive agencies, represent such agencies in negotiations with carriers and other public utilities and in proceedings involving carriers or other public utilities before Federal and State regulatory bodies. . . .

The purpose for granting the Administrator such authority is articulated in 40 U.S.C. § 471:

It is the intent of the Congress in enacting this legislation to provide for the Government an economical and efficient system for (a) . . . representation before Federal and State regulatory bodies. . . .

The statutory scheme reveals that Congress intended that the Administrator be an effective voice protecting federal interests and presenting the United States' position at rate hearings. While we do not consider what would be the rights of the United States before a state regulatory agency which does not permit intervention by private parties, in one like the Public Service Commission of Maryland where intervention is permitted, there can be little doubt that the time limitation in Rule IV–A would severely hamper the Administrator in his attempt to carry out his duties under § 481. The outcome of rate hearings often depends upon the weight which the Commission gives to the elaborate calculations of opposing experts. In many cases, even when the issue of the level of rates has been determined, the United States, as a uniquely large consumer, may have a substantial interest in the form of the rate—an issue which is of less significance to People's Counsel as the representative of a myriad of small consumers. The ability to cross-examine is thus critical. Due to the complex nature of the subject matter involved, effective cross-examination often must necessarily be involved and lengthy. In many cases it would be entirely unreasonable to expect the Administrator effectively to attack opposing positions within a thirty-minute time limit.

Further, the difficulty is exacerbated by the order in which cross-examination is to take place. While the time limit in Rule IV–A does not apply to the Office of People's Counsel, which has unlimited time in which to cross-examine opposing witnesses, it is conceded that the order of procedure is for People's Counsel to cross-examine *last*. If the Administrator followed People's Counsel, the former could effectively use his thirty minutes in reinforcing points made by the latter, or in exploring small

areas which People's Counsel had failed to cover. Moreover, if broad areas remained untouched after People's Counsel's cross-examination, the Administrator·might well be in a position successfully to obtain a waiver of the rule in order that all such areas might be fully explored.

But; under the order of procedure which is followed, the Administrator must speculate about what areas will be covered by People's Counsel's examination. This could lead to the federal representative spending his cross-examination time futilely exploring areas which are later fully covered by People's Counsel; at the same time, important points which the Administrator wishes to bring to the attention of the Commission may remain entirely unexplored.

In short, in many cases Rule IV–A will prevent the Administrator from effectively representing the interests of the United States in utility rate proceedings. By setting an arbitrary time limit, the. Commission has ignored the variance between cases in the magnitude of the interests involved, the complexity of the subject-matter, the significance of the witnesses' answers, the extent to which the issues probed by cross-examination have not been previously addressed, and the need of the parties to build an adequate record for judicial review. Any one of these factors might require that the Administrator have more than thirty minutes' cross-examination in order to fulfill his mandate under 40 U.S.C. §§ 471 and 481(a)(4). Since the rule thus substantially impairs the mandate of Congress that the Administrator represent the United States before the Public Service Commission, we conclude that it is invalid under the Supremacy Clause of the Federal Constitution. · Accordingly, we conclude that defendants' motions to dismiss and for summary judgment must be denied, and that plaintiffs' motion for summary judgment should be granted.

## III

### Relief

■ In the light of the foregoing, we will give an immediate declaration of invalidity.

We feel certain that our declaration of invalidity will be respected by the Commission and therefore we will not presently issue a permanent injunction unless or until (a) plaintiffs demonstrate that our confidence that our declaration will be respected is misplaced, or (b) defendants request the entry of an injunction now so as to make certain defendants' avenues of further appellate review.

We request counsel to agree upon a form of final judgment and to present it within ten (10) days.

BLAIR, District Judge (concurring in the result).

Since I reach the same result for different reasons I record my views separately.

I join in the court's holdings that (1) suit is not barred by the Johnson Act, 28 U.S.C. § 1342, (2) this is not a proper case for abstention, and (3) plaintiffs have exhausted available administrative remedies and are required to do no more.

I would then reach and decide the claim that the P.S.C. Rule denies plaintiffs equal protection of the law.

### Equal Protection

Plaintiffs assert that by state statute and common law they have a right to cross-examination and that the arbitrary restriction imposed by Rule IV–A denies them equal protection of the law in violation of the federal constitution. Defendants initially argue that plaintiffs have neither a statutory nor common law right to cross-examination since the Commission proceedings in question are legislative rather than judicial in nature. Alternatively, defendants contend that equal protection does not extend to plaintiffs and that even if it does, the contested Rule must be upheld as it has a reasonable basis.

### Is the United States Entitled to Equal Protection?

At the outset, the right of the United States and the Administrator of its General

Services Administration to assert equal protection claims must be determined. Defendants argue that by its wording the Fourteenth Amendment excludes the United States from the ambit of equal protection. The Amendment in pertinent part provides:

> "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Thus, the threshold equal protection question is whether the United States can be a "person" entitled to equal protection of Maryland law.[1] Although there is a paucity of authority, I would hold that on the undisputed facts presented to us the plaintiffs are entitled to equal protection in this case.

Here, the United States, like many other consumers, is a purchaser of public utility services. As a consumer, it neither exercises nor asserts rights of sovereignty but submits to the state's determination, through its regulatory agency, as to the availability and cost of public utility service. Congress has expressly authorized the acquisition of public utility services in this manner by the Federal Property and Administrative Services Act of 1949 (Property Act) which provides in relevant parts:

> It is the intent of the Congress in enacting this legislation to provide for the Government an economical and efficient system for (a) the procurement and supply of personal property and nonpersonal services, including related functions such as contracting, . . . .

40 U.S.C. § 471 (1969).

> (a) The Administrator shall, in respect of executive agencies, and to the extent that he determines that so doing is advantageous to the Government in terms of economy, efficiency, or service, and with due regard to the program activities of the agencies concerned—
>
> (4) with respect to transportation and other public utility services for the use of executive agencies, represent such agencies in negotiations with carriers and other public utilities and in proceedings involving carriers or other public utilities before Federal and State regulatory bodies; . . . .

40 U.S.C. § 481(a)(4) (1969 & 1976 Supp.).

It is under the authority granted by the Property Act that the General Services Administration represents the United States in dealings with public utilities and in appearances before state regulatory agencies. When so situated in the market place, the United States is, like other consumers of utility services, engaged in a purely business and commercial transaction. I think it unreasonable to infer, in the absence of clear authority to the contrary, that when the United States goes to market in the same manner as any other consumer it should not be entitled to equal protection of the law. The sovereign asserting no rights of sovereignty has become merely a consumer. See United States v. City of Jackson, 318 F.2d 1 (5th Cir. 1963); United States v. Coumantaros, 165 F.Supp. 695, 697–98 (D.Md.1958) (sovereign more likely to be "person" where engaged in commercial or business transactions such as other persons are likely to conduct).

## Is There a Right to Cross-Examination under Maryland Law?

Plaintiffs assert that Rule IV–A limiting their cross-examination to thirty minutes and their recross to twenty minutes, where witness testimony has been prefiled, is a denial of equal protection of the law. Spe-

---

1. See generally Shelley v. Kraemer, 334 U.S. 1, 22, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (Fourteenth Amendment protects personal rights); Wisconsin v. Zimmerman, 205 F.Supp. 673, 675 (W.D.Wisc.1962) (state not a person within meaning of Fourteenth Amendment). Cf. Williams v. Mayor & C.C. of Baltimore, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) (municipality can't raise constitutional claims against the state). But see Ligett Co. v. Lee, 288 U.S. 517, 536, 53 S.Ct. 481, 77 L.Ed. 929 (1933) (corporation person within Fourteenth Amendment); Safeguard Mutual Ins. Co. v. Miller, 472 F.2d 732, 733 (3d Cir. 1973) (id.); Township of River Vale v. Town of Orangetown, 403 F.2d 684, 686 (2d Cir. 1968) (municipal corporation person within Fourteenth Amendment).

cifically, plaintiffs assert that this limitation of cross-examination by intervenors with no limitation of cross-examination by the public utilities applying for the rate adjustment or the People's Counsel is without rational basis.[2]

Plaintiffs make no claim of a federal constitutional due process right to unrestricted cross-examination. Rather, plaintiffs claim that the right to reasonable cross-examination is guaranteed them both by Maryland statute and case law. Where rights, although perhaps not constitutionally required, are established by state law, any classification affecting or limiting those rights may be questioned on equal protection grounds. *See Baxstrom v. Herold*, 383 U.S. 107, 110, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) (civil insanity commitment after prison term requires right to jury where other such commitments subject to that right); *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (appellate review not constitutionally mandated but where statutorily provided, can't deprive on basis of irrational classification); *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 66 L.Ed. 254 (1921) (right to equitable relief impermissibly abridged in context of employer/employee disputes). *See generally Robinson v. Florida*, 378 U.S. 153, 156, 84 S.Ct. 1693, 12 L.Ed.2d 771 (1964) (action by state administrative body subject to equal protection clause).

Plaintiffs rely for their claimed right of cross-examination on *Annotated Code of Maryland*, Art. 78, § 82 (1975 Repl.Vol.), entitled "Rights of parties to hearing," which provides in pertinent part:

*Any party* to *any hearing* shall have, in addition to any other rights to which he may be entitled:

(b) The right of cross-examination and the right to submit rebuttal evidence. [emphasis supplied].[3]

Defendants contend that the above statute applies only to contested cases before the Commission involving quasi-judicial determinations. *See Annotated Code of Maryland*, Art. 78, § 79 (1975 Repl.Vol.) (right to hearing in contested cases). In contrast, defendants assert, the rate making proceedings, to which PSC Rule IV–A applies, are essentially legislative in character and do not necessitate a grant of the full panoply of procedural rights. *See Albert v. PSC*, 209 Md. 27, 120 A.2d 346, 350 (1956) (PSC order re: taxicab rates legislative/administrative; no hearing required); *Gregg v. Laird*, 121 Md. 1, 87 A. 1111, 1113 (1913) (establishment of public utility rates legislative, not judicial task). *Cf. Bowles v. Willingham*, 321 U.S. 503, 514, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (administrative setting of maximum rents in defense areas legislative function).

Defendants' construction of the Maryland statute providing for cross-examination in Commission proceedings as not pertaining to the rate cases at issue here does not comport with the statute's clear language. As quoted *supra*, the Maryland statute (Art. 78, § 82(b)) guarantees cross-examination to "any party to any hearing," not just to parties in hearings provided for contested cases. I find no warrant for holding that the statute means less than it says.[4] There-

---

**2.** By stipulation the parties have agreed that these time limitations do not apply to the applicant for the rate change. The PSC Rule, by its express language, provides that the time limitations do not pertain to People's Counsel.

**3.** Plaintiffs do not dispute that the Commission has the statutory right to promulgate reasonable rules to assist in the accomplishment of its responsibilities. *See Annotated Code of Maryland*, Art. 78, § 64 (1975 Repl.Vol.). Further the Commission is not constrained by the technical rules of evidence or strict judicial procedure. *See id.* § 76. The Maryland Administrative Procedure Act is not applicable to the

Commission. *See id.*, Art. 41, § 244(a) (1975 Supp.); *PSC v. Hahn Transportation, Inc.*, 253 Md. 571, 253 A.2d 845, 852 (1969).

**4.** Having reached this conclusion, there would be no need to resolve the question of whether Maryland case law similarly guarantees a right to cross-examination in Commission rate proceedings, a position urged by the plaintiffs. *See PSC v. Hahn Transportation, Inc.*, 253 Md. 571, 253 A.2d 845, 849–50 (1969); . *Hyson v. Montgomery County Council*, 242 Md. 55, 217 A.2d 578, 582–86 (1966). *But see Albert v. PSC*, 209 Md. 27, 120 A.2d 346, 350 (1956).

fore, I conclude that there is a right to cross-examination.

## Is There a Rational Basis for the Classification Made by the Rule?

The "rational basis" equal protection test is the test to be applied in this case.

Under the rational basis test, a classification "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). The burden is upon the one assailing the classification to show that it does not rest upon any reasonable basis. *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78–9, 31 S.Ct. 337, 55 L.Ed. 369 (1911). The cases consistently recognize the rights of the states to draw classifications without mathematical nicety so long as the criteria for the classifications bear a reasonable relationship to the state's objectives. *Reed v. Reed*, 404 U.S. 71, 75–6, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). To survive a rational basis analysis, a classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the [classification], so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

From the preamble to the Rule and an affidavit from the then-chairman of the Commission, we are informed as to the reasons for the Rule. In sum, they are that the number of hearings held by the Commission is increasing, the Commission has a duty to render decisions within limited times and that undue delays have been occasioned by extended and repetitious cross-examination of witnesses. For these reasons, the Commission considered the Rule to be "necessary and essential to the prompt and proper conduct of its proceedings." The Commission further concluded that its practice of requiring prefiled testimony and its exemption of People's Counsel from the Rule ameliorated the time constraints placed upon intervenors in their cross-examination of witnesses.

Defendants insist that the Rule has a rational basis furthering a legitimate state objective. Plaintiffs contend that in furthering that objective the Rule is wholly arbitrary and impermissibly discriminatory. While recognizing the considerable latitude left to the states in drawing classifications under the rational basis test, I would conclude that plaintiffs have much the better of the argument.

As earlier noted, I believe that the plaintiffs have a statutory right to cross-examination when appearing before the Commission as intervenors in a case involving an application by a public utility for an adjustment in rates. The beneficial effects of cross-examination in the fact development process before judicial and administrative tribunals are too well known to require elaboration. By the Commission's Rule, the rights of intervenors to cross-examination are severely limited.

While the intervenors do have the benefit of the prefiled testimony of adverse witnesses, I fail to see that this is a rational justification for imposing an arbitrary time limitation for cross-examination by intervenors. The prefiling of testimony does not assure that probative cross-examination may be adequately undertaken in thirty minutes. The opportunity to analyze prefiled testimony could often result in lengthier, rather than more concise, meaningful cross-examination.

The Commission also advances the argument that People's Counsel, exempted from the limitations imposed by the Rule, and charged with representing "the interests of the public in general," *Annotated Code of Maryland*, Art. 78, § 15 (1975), *amended*, (1975 Supp.), represents the interests of the intervenors as well as all other members of the public. This broad responsibility, the Commission suggests, provides ample reason for limiting the cross-examination by intervenors because the public interest, including that of the intervenors, will be served by the advocacy of People's Counsel. This contention rests upon an entirely unsupported assumption. The interests of some consumers may be entirely antagonis-

tic to that of other consumers. This would appear to be so especially where as in the case of the plaintiffs the intervenor is a very large consumer of services from the public utility. In such instances, the apportionment of rates among the users may be as critical as the question of whether and to what extent a rate increase should be granted. Thus it is not difficult to foresee that in confronting these apportionment issues, the interests of People's Counsel and of plaintiffs could diverge.

The strictures of time and an increasing workload are certainly legitimate factors for the Commission to consider in determining what reasonable measures it may exact for the conduct of its affairs. We note, however, in this regard that the members of the Commission were until recently all part-time employees and that the Commission is given considerable latitude in the time and methods by which it may consider and reconsider applications for rates. Under the *Annotated Code of Maryland*, Art. 78, §§ 70–71 (1975 Repl.Vol.), new utility rates go into effect on the date requested in the application unless the Commission orders their suspension. Such a suspension can last up to 150 days. *Id.,* § 70(b). The rates then go into effect subject to refund upon later Commission determination that the rates were unjustified. *Id.,* § 70(c). Additionally, the Commission can set temporary rates for up to one year pending completion of rate proceedings. *Id.,* § 71.

Thus, while the Rule leaves the applicant for the rate increase and People's Counsel unfettered in their cross-examination intervenors are strictly limited quite irrespective of the length, complexity or vulnerability of a witness' direct examination. Skillful, noncumulative and fruitful cross-examination is treated no better than inept, redundant and unilluminating cross-examination. This limitation is not compensated by the fact that intervenors have the right to subpoena and present witnesses at a hearing. *Annotated Code of Maryland*, Art. 78,

§§ 80, 82(a) (1975 Repl.Vol.). The fungibility of cross-examination and direct examination is surely open to question. Cross-examination often is the only effective means to attack the credibility of an expert for the opposition.

There is little doubt that the Rule would permit the Commission to dispatch its business in a shorter time, but we must be mindful also that "the Constitution recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972) (footnote omitted).

Administrative bodies, like judicial tribunals, may exercise a wide discretion in the conduct of proceedings before them. They have a substantial body of precedent upon which to rely in adopting permissible limits for the conduct of proceedings. That discretion includes the right to limit the subjects and length of inquiry based upon rational considerations. The Rule involved in this case gives no consideration to the magnitude of the interests involved, the complexity of the subject, the significance of the witnesses' answers, the witnesses' responsiveness to cross-examination, the extent to which the issues probed by cross-examination have not been previously addressed, nor the need for the parties to build an adequate record for judicial review. In short, it is purely procrustean and lacks a rational basis in advancing a legitimate state objective.

I would hold, therefore, that Commission Rule IV–A violates equal protection of the laws [5] and that defendants' motions to dismiss and for summary judgment should be denied and that plaintiffs' motion for summary judgment should be granted.

---

**5.** Having reached this conclusion, it would not be necessary to reach the issue of whether Commission Rule IV–A impermissibly abridges any right of effective appellate review. *See*

*Powhatan Mining Co. v. Ickes*, 118 F.2d 105, 110 (6th Cir. 1941); *Grimm v. Brown*, 291 F.Supp. 1011, 1014 (N.D.Cal.1968), *aff'd,* 449 F.2d 654 (9th Cir. 1971).