December 18, 1978

**78-66 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, CENTRAL INTELLIGENCE AGENCY**

**Central Intelligence Agency—Supremacy Clause (Constitution, Article VI, Clause 2)—Possible State-Federal Law Conflict Involving Classified Information—CIA's Proposed Administration of Polygraph Examinations of Its Contractors' Employees**

This responds to a request by your Office for our views on State laws bearing on the Central Intelligence Agency's (CIA) administration of polygraph examinations of certain employees of those U.S. corporations which have classified contracts with the CIA.

I.

Any discussion of the question whether State law may restrict the performance of Federal functions must first address the issue whether those Federal functions are authorized. In our view, the CIA has the authority to conduct the polygraph examinations involved in order to protect the confidentiality of classified information.

Several provisions of law, both of general and particular applicability, support the CIA's authority in this situation. As a general matter, Executive Order No. 12065, 43 F. R. 28949 (June 23, 1978) requires Federal agencies to insure the security of classified information. The pertinent provisions of that order provide:

> No person may be given access to classified information unless that person has been determined to be trustworthy and unless access is necessary for the performance of official duties. [Section 4-101[1]]

---

[1] Information Security Oversight Office Directive No. 1, approved September 29, 1978, issued pursuant to the provisions of Executive Order No. 12065, further states that:

> A person is eligible for access to classified information only after showing of trustworthiness as determined by agency heads based upon appropriate investigations in accordance with applicable standards and criteria. [Section IV. B. 2]

> Controls shall be established by each agency to ensure that classified information is used, processed, stored, reproduced, and transmitted only under conditions that will provide adequate protection and prevent access by unauthorized persons. [Section 4-103]
>
> Agency heads listed in Section 1-201 may create special access programs to control access, distribution, and protection of particularly sensitive information classified pursuant to this Order or prior Orders. [Section 4-201]

The order also mandates that "classified information disseminated outside the Executive branch shall be given protection equivalent to that afforded within the Executive branch." § 4-105. This provision, in conjunction with the other cited above, would appear to require security precautions in instances where classified information is to be given to the employees of CIA contractors.

Several provisions of law focus on the CIA's responsibilities to protect the confidentiality of sensitive information. First, the Director of the CIA is made responsible by statute "for protecting intelligence sources and methods." Second, Executive Order No. 12036, 43 F. R. 3674 (Jan. 24, 1978), requires the CIA to "protect the security of its installations, activities, information and personnel by appropriate means, including such investigations of applicants, employees, contractors, and other persons with similar associations with the CIA as are necessary." § 1-811. This provision, as well as others in the order, *see* §§ 2-206(d), 2-208(e), explicitly allow the investigation of contractors handling sensitive information.

It seems evident that, on the basis of the foregoing authorities, the CIA is authorized and required to conduct investigation of its contractors' employees to insure the security of sensitive information. Based on the information supplied by your Agency, we believe that the use of polygraph examinations is also an authorized function. While no Federal law explicitly authorizes this approach, the lack of such a provision cannot be deemed controlling. *United States* v. *Macdaniel*, 7 Pet. 1, 13-14 (1833). Rather, in this case the following general rule should apply: when a statute imposes a duty, it authorizes by implication all reasonable and necessary means to effectuate the duty. *United States* v. *Jones*, 204 F. (2d) 745, 754 (7th Cir. 1953); *United States* v. *Kelly*, 55 F. (2d) 67 (2d Cir. 1932); 2A Sutherland, *Statutes and Statutory Construction*, § 55.04 (4th ed. 1973) at 384.[2] The use of polygraph tests, as we are informed, provided a means for determining whether employees may be entrusted with sensitive information. We are also informed that this technique elicits information that could not otherwise be obtained so that security is enhanced in a manner that could not otherwise be accomplished, making polygraph examinations an "extraordinarily useful device." Polygraph examinations thus may be seen as reasonable and necessary means to the effectuation of duties imposed

---

[2]The same general rule is set forth in Executive Order No. 12036, § 1-811, which authorizes "appropriate means" to protect security.

on the CIA under Federal law, and therefore the use of such examinations is authorized under Federal law.[3]

We believe, however, that a caveat is in order. Executive Order No. 12036, § 1-811, allows for "such investigations of . . . contractors . . . as are *necessary*." The requirement of necessity may be read as precluding the administration of polygraph tests on an undifferentiated basis to all employees of a contractor. However, an evaluation and determination of the need for the administration of such tests to a particular contractor's employees, or to certain classes of such employees, would appear to be more consonant with the provisions of the order. Since polygraph testing is apparently now being administered only to employees who either have access to or are being considered for access to SCI information, it appears that the need for such a procedure is being weighed and determined.

## II.

Massachusetts has enacted the following statute:

> Any employer who subjects any person employed by him, or any person applying for employment, including any person applying for employment as a police officer, to a lie detector test, or requests, directly or indirectly, any such employee or applicant to take a lie detector test, shall be punished by a fine of not more than two hundred dollars. This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations. [Chapter 149 sec. 19B, Mass. Gen. Law]

One question raised by your office is whether the above statute may be legitimately applied to either the CIA or its Massachusetts contractors.

Your office believes that, by its own terms, the statute would not encompass the polygraph examinations the CIA wishes to conduct. The construction of the Massachusetts statute is a function to be performed by the appropriate State officials, although it is proper for you to urge on them your construction. We address here only the question of the validity of the statute, assuming that it does impinge on the performance of a Federal function. For the following reasons we believe that Massachussetts may not legally apply the statute to either the CIA or its contractors.

## A.

We first discuss the application of the statute to CIA itself. It is a fundamental principle of Federal constitutional law that, by reason of the

---

[3]We understand that employees who are to be tested know that they are performing work for CIA, are informed of CIA's involvement in the testing, and consent to the testing. We do not believe that any problem arises from the prohibition on CIA's performance of internal security or law enforcement functions, *see* 50 U.S.C. § 403(d)(3), even as that prohibition was interpreted in *Weissman* v. *CIA*, 565 F. (2d) 692 (D.C. Cir. 1977). Nor are we aware of any other general prohibition on the use of polygraph testing by intelligence agencies.

Supremacy Clause, Article VI, cl. 2, the lawful activities of the Federal Government may not be regulated by any State. *Mayo* v. *United States,* 319 U.S. 441, 445 (1943).

Concededly, the situation here differs from the usual Supremacy Clause question. In the ordinary case, courts are called on to review State laws that conflict with a Federal statute or regulation. Although the Director's authorization of polygraph examinations does not so clearly proceed from statute or regulation, we do not believe that this is of any real consequence. It is not the abstract inconsistency between the express terms of State and Federal law which is the concern underlying the Supremacy Clause. *Cf., Los Alamos School Board* v. *Wugalter,* 557 F. (2d) 709, 714 (10th Cir. 1977) (potential or peripheral conflicts between State and Federal law will not render the State law invalid). Rather, the evil that the clause addresses is the obstruction to the accomplishment and execution of Federal purposes and objectives. *Hines* v. *Davidowitz,* 312 U.S. 52, 67 (1941). This may occur not only when State law conflicts with the express terms of Federal law, but also when State law impedes the performance of activities conducted under the authority of Federal law. *See, United States* v. *Public Service Commission,* 422 F. Supp. 676 (D. Md. 1976) (three-judge court) (upholding General Service Administration authority to conduct cross-examinations in utility rate proceedings beyond time limit imposed by State); *In Re New York State Sales Tax Records,* 382 F. Supp. 1205 (W.D. N.Y. 1974) (exercise of grand jury powers prevails over State nondisclosure law). *See also, United States* v. *City of Chester,* 144 F. (2d) 415, 420 (3d Cir. 1944). Since the administration of polygraph examinations is an activity authorized under Federal law, it may not be impeded by State law.

We recognize that, in certain circumstances, State law has been deemed to apply to, and control, the exercise of various Federal functions. This result obtains, however, only where the application of State law would not undermine Federal purposes or functions. *See, Mayo* v. *United States, supra,* at 446; *Federal National Mortgage Association* v. *Lefkowitz,* 390 F. Supp. 1364, 1368 (S.D. N.Y. 1975). *See also, City of Norfolk* v. *McFarland,* 145 F. Supp. 258, 260 (E.D. Va. 1956). We are informed by the CIA that the application of the statute to it would result in its inability to perform satisfactory security checks, and this in turn would substantially impair its procurement operations. On this basis, the rationale adopted in the decisions cited above does not justify the application of the Massachusetts statute.

The Supremacy Clause question often requires the assessment of congressional intent, *i.e.,* whether Congress, in promulgating the statutes under which the Executive branch implements a regulation, intended Federal action to override inconsistent State laws. In some cases an examination of the legislative history and the structure of a statute reveals that Congress did not intend to interfere with State regulation. Where, however, there is a clear conflict between the implementation and a State law, and there is no evidence that Congress contemplated the Federal interest to be subordinated, the State enactment must yield. We believe such conflict to exist in this instance, and

296

since we know of no congressional intent that the State's interest should prevail, the State law must yield.

## B.

The remaining question is whether, even though the Massachusetts statute may not be validly applied to CIA itself, it may, nevertheless, be enforced against CIA's contractor. We reiterate here that we express no views on the interpretation of the statute insofar as CIA's contractor is concerned. Rather, we address only the question whether the statute may legitimately be applied to the contractor.

Whether State law may be applied to those under contract with the Federal Government is difficult to answer authoritatively. It is clear that the mere fact that a particular entity is performing work for the Federal Government does not entirely exempt it from State regulation. *See, Railway Mail Association* v. *Corsi*, 326 U.S. 88, 95-96 (1945) (applying State nondiscrimination law to postal union); *Stewart and Co.* v. *Sadrakula*, 309 U.S. 94 (1940) (holding a State safety requirement applicable to Federal contractor); *Public Housing Administration* v. *Bristol Township*, 146 F. Supp. 859 (E.D. Pa. 1956) (Federal contractor required to adhere to building code requirements). On the other hand, it also seems clear that performance of work for the Federal Government may at times exempt it from State or local regulation. *See, Leslie Miller, Inc.* v. *Arkansas*, 352 U.S. 187, 190 (1956); *Pacific Coast Dairy* v. *Department of Agriculture of California*, 318 U.S. 285 (1943); *Contractors Association of Eastern Pennyslvania* v. *Secretary of Labor*, 442 F. (2d) 159, 166 (3d Cir. 1971).

The courts approach the assessment of the validity of State statutes imposing burdens on Federal contractors in much the same way as they approach the statutes imposing burdens on the Federal Government itself. That is, the courts look to whether the State statutes would frustrate the operation of Federal functions. *See, Railway Mail Association* v. *Corsi, supra,* at 95-96; *Leslie Miller, Inc.* v. *Arkansas, supra,* at 190; *Stewart and Co.* v. *Sadrakula, supra,* at 103-04; *Associated General Contractors of Massachusetts, Inc.* v. *Altshuler,* 490 F. (2d) 9, 15 (1st Cir. 1973); *City of New York* v. *Diamond,* 379 F. Supp. 503, 520 (E.D. N.Y. 1974). Under this standard, it is our opinion that the application of the Massachusetts law to the contractor in this instance would frustrate Federal functions to the same extent as though the law were to apply to the CIA itself. According to the CIA, such an application would inevitably result in the contractor's refusal to allow his employees to take part in the polygraph examination program, which in turn would result in less than adequate security and ultimately would jeopardize CIA procurement. The decisions under the Supremacy Clause do not allow State law to cause this sort of disruption of Federal programs, even if the law is applied only to a contractor and not to the Federal Government itself.

## II. Conclusion

For the foregoing reasons, we conclude that the Massachusetts law in question may not be legitimately applied to either CIA or its contractors so as to preclude authorized polygraph examinations. However, a word of caution is appropriate. The application of State law to Federal contractors is generally dependent on the facts and circumstances of a particular setting, *see, Mayo* v. *United States*, 319 U.S. at 447-48; *Los Alamos School Bd.* v. *Wugalter*, 557 F. (2d) at 712, 714, and is thus a question which necessarily entails a judgment predicated on a number of different factors. Moreover, as the considerable volume of case law in the State-Federal law conflict area demonstrates, disputes of this type often result in litigation and resolution pursuant to standards that are often difficult to apply with precision. It is, therefore, an area in which prelitigation predictions of success must necessarily be cautious.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*